**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 13-4635**

─────────────

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

 v.

XAVIER DESHAWN LYMAS,

 Defendant - Appellant.

─────────────

**No. 13-4636**

─────────────

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

 v.

LIONEL BERNARD NEWMAN, a/k/a Mooky,

 Defendant - Appellant.

─────────────

**No. 13-4650**

─────────────

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

 v.

JESSIE GOMEZ, a/k/a Jesus,

        Defendant - Appellant.

---

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:12-cr-00336-BO-1; 5:12-cr-00336-BO-3; 5:12-cr-00336-BO-2)

---

Argued: December 11, 2014        Decided: March 18, 2015

---

Before TRAXLER, Chief Judge, and WYNN and HARRIS, Circuit Judges.

---

Vacated and remanded by published opinion. Chief Judge Traxler wrote the opinion, in which Judge Wynn and Judge Harris joined.

---

**ARGUED:** Terry F. Rose, Smithfield, North Carolina; G. Alan DuBois, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellants. Shailika S. Kotiya, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant Lymas. Brett Wentz, WENTZ LAW, PLLC, Wilmington, North Carolina, for Appellant Gomez. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

TRAXLER, Chief Judge:

Appellants Xavier D. Lymas, Lionel B. Newman and Jessie Gomez challenge both the procedural and substantive reasonableness of their sentences. We conclude that the district court committed procedural error by failing to explain its rejection of the Guidelines sentences or to offer an individualized assessment to justify each appellant's sentence based on the particular facts of the case before the court. We therefore vacate and remand for resentencing.

I.

A.

This appeal arises from a convenience-store-robbery spree that occurred over a four-day period in Fayetteville, North Carolina, in the fall of 2011. In need of rent money, Gomez enlisted the participation of Lymas and Jose Morales to help him commit a robbery. Morales recruited Newman and obtained two .38 caliber handguns. On October 27, 2011, the four men gathered at Gomez's home and decided to rob a Short Stop convenience store. Morales drove the appellants to the scene; Lymas and Gomez were armed. When the group arrived, however, the store was crowded and they decided to abort the robbery.

Later that day, having been forced to abandon their initial target, the group decided to hit a different convenience store. Morales dropped off Gomez, Newman and Lymas behind the Kangaroo

3

Express on Natal Street in Fayetteville and then observed the store from a distance. On Morales's signal, Gomez, Newman and Lymas entered the store wearing dark clothing, ski masks and gloves. This time, Gomez and Newman were armed. Gomez demanded money from the store clerk and knocked the clerk on the back of the head with the butt of his handgun.[1] Lymas, who was not armed, grabbed $108.48 from the cash register as well as some lighters and cigar wrappers from the counter. The appellants then escaped in Morales's car.

Newman, however, was not finished for the day, and he recruited a juvenile accomplice to help him rob a Kangaroo Express located in Hope Mills, North Carolina. Newman and the juvenile accomplice were both wearing ski masks, hoodies, and gloves, and they were carrying the handguns obtained by Morales and used in the earlier robbery. Before entering the store, the juvenile indicated he intended to shoot the store clerk. Upon entering the store, however, Newman sent his juvenile accomplice back to the coolers to take some beer while Newman pointed his gun at the clerk and took money from the register. Lymas and Gomez played no part in this robbery.

---

[1] Although the store clerk was sent to the hospital for evaluation, he later indicated it was not a significant blow and compared it to being hit on the head with a textbook.

4

On October 30, 2011, Gomez, Lymas and Morales met at Gomez's home to plan another robbery. Newman did not participate. Morales drove Gomez and Lymas to a different Kangaroo Express convenience store located in Hope Mills. Both Gomez and Lymas were carrying handguns as they entered the store. As it turned out, the police had the store under observation and arrested Gomez and Lymas immediately. Newman and Morales were arrested later.

All three appellants, along with Morales, were named in an eight-count indictment. All three appellants were charged with conspiracy to commit a Hobbs Act robbery, see 18 U.S.C. § 1951 (Count One)[2]; commission of a Hobbs Act robbery of the Natal Street Kangaroo Express on October 27, 2011, see 18 U.S.C. § 1951 (Count Two); and using and carrying a firearm during and in relation to a crime of violence, namely the robbery charged in Count Two, see 18 U.S.C. § 924(c)(1)(A) (Count Three).

Newman was charged separately with commission of a Hobbs Act robbery of a Hope Mills Kangaroo Express on October 27, 2011, see 18 U.S.C. § 1951 (Count Four); and using and carrying a firearm during and in relation to a crime of violence, namely the Hope Mills Kangaroo Express robbery charged in Count Four,

---

[2] The indictment alleged as overt acts in furtherance of the conspiracy the two robberies and the aborted robbery on October 27, 2011, as well as the attempted robbery on October 30, 2011.

see 18 U.S.C. § 924(c)(1)(A) (Count Five). Lymas and Gomez were separately charged with an October 30, 2011, Hobbs Act robbery stemming from their attempted robbery of a second Hope Mills Kangaroo Express, see 18 U.S.C. § 1951 (Count Six); and using and carrying a firearm during and in relation to a crime of violence, namely the attempted October 30, 2011, robbery charged in Count Six, see 18 U.S.C. § 924(c)(1)(A) (Count Seven). Finally, Lymas alone was charged with unlawful possession of a firearm by a convicted felon, see 18 U.S.C. §§ 922(g)(1) (Count Eight).

Appellants each pled guilty to Counts One (Hobbs Act Conspiracy) and Three (using and carrying a firearm during and in relation to a crime of violence) of the indictment. The government dismissed the remaining counts as to each appellant.

B.

For Lymas, the presentence report ("PSR") recommended a three-point downward adjustment for acceptance of responsibility for a total offense level of 25 and scored Lymas with a criminal history category of II. Lymas's resulting advisory sentencing range was 63-78 months, plus a consecutive 60-month term for the using and carrying conviction under § 924(c)(1)(A).

The PSR calculated Newman's total offense level to be 26, which reflected a three-level reduction for acceptance of responsibility but a six-level enhancement for pointing a

6

firearm at the store clerk during the October 27 robbery of the Hope Mills Kangaroo Express. With a category V criminal history, Newman faced an advisory sentencing range of 110-137 months, as well as the consecutive 60-month using-and-carrying term. The PSR indicated that Newman was a member of the Tangle Wood Cartel, a Fayetteville street gang; authorities only suspected Gomez and Lymas were affiliated as well.

Finally, for Gomez, the PSR determined his total offense level to be a 27. Gomez, like his co-defendants, was credited with a three-point acceptance-of-responsibility reduction; however, the PSR recommended imposing a two-level enhancement because Gomez played a leadership role in the conspiracy. The PSR placed Gomez in criminal history category IV, which, when paired with an offense level of 27, yielded an advisory sentencing range of 100-125 months. Gomez was also subject to the consecutive 60-month § 924(c) term.

Lymas appeared first for sentencing. The district court reviewed the crimes with Lymas and asked him several questions regarding membership in the Crips street gang, which Lymas denied. Counsel for Lymas highlighted the fact that he was not an organizer or leader and requested a sentence at the low end of the 63- to 78-month advisory range. The government requested a sentence at the high end of the guideline range based on the violent nature of the crimes and the fact that Lymas

7

participated in two robberies from October 27 to October 30, 2011. Before imposing sentence on Lymas, the district court asked the government attorney about the sentencing ranges for co-defendants Newman, Gomez and Morales, which were significantly higher than Lymas's range as a result of their higher criminal history scores. The district court then stated,

> [T]his is one of the fallacies of guideline sentencing that in reality, in justice, in fairness and in truth, these four people should receive the same sentence and should be punished equally across the board for what they did. And the ostrich approach of sticking your head in the sand that the guidelines champion would allow vast disparity in punishment and inequality and it's a great example of the irrationality of guideline sentencing and why it's a failed exercise.
>
> I'm very much of the opinion that I ought to sentence each one of these four to a minimum of 120 months on the first count, on the robbery, and then 60. So, 15 years.

J.A. 131-32. The court opined that the advisory sentencing ranges for all of the defendants "fail to take into account the seriousness and the danger and the repetitive quality of these crimes . . . [and] grossly under punish and grossly ignore the dangers of the crimes." J.A. 134. The district court then imposed an upward variance of 62 months for a 140-month sentence for Lymas on Count One and a mandatory, consecutive 60-month term on Count Three, for a combined sentence of 200 months.

At Gomez's subsequent sentencing hearing, the district court indicated it was "incorporat[ing] our 3553(a) factors

8

stated in the previous sentencing [for Lymas]" and again found that "the guideline range underrepresents the seriousness of the crime, the danger to society, and that [Gomez] needs to be sentenced at a higher level in order to punish the crime and protect the community." J.A. 141. Just as it had for Lymas, the district court sentenced Gomez to 140 months on Count One, which amounted to an upward variance of 15 months. Gomez's total sentence was 200 months, which included the 60-month term for the § 924(c) violation charged in Count Three.

Finally, the district court imposed an identical sentence of 140 months on Count One for Newman as well, which reflected an upward variance of three months,

> based on the conclusions that I've reached about the violence of this crime, the pistol whipping of the victim, the threat to society, the random introduction of violence into a commercial setting.
>
> All of these things are underrepresented by the guideline calculation and a sentence of 140 months given his criminal history and the recidivism and the danger that he presents is a fair, just and necessary sentence . . . .

J.A. 145-46. This sentence, plus the 60-month term for using and carrying in violation of § 924(c), yielded the same total term of imprisonment for Newman as for his co-defendants--200 months.

II.

We review the reasonableness of a sentence under 18 U.S.C. § 3553(a) using an abuse-of-discretion standard, regardless of "whether [the sentence is] inside, just outside, or significantly outside the Guidelines range." Gall v. United States, 552 U.S. 38, 41 (2007). "Our reasonableness review has procedural and substantive components." United States v. Boulware, 604 F.3d 832, 837 (4th Cir. 2010). First, we must determine whether the district court committed any procedural error,

> such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

Gall, 552 U.S. at 51. Only if we determine that the district court has not committed procedural error do we proceed to assess "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id.

Appellants argue that the district court committed procedural error because it offered no individualized rationale to justify the sentences it imposed. We are constrained to agree. Because we conclude that the sentences were procedurally unreasonable, we address only the procedural component in this case.

10

A.

Section 3553

> contains an overarching provision instructing district courts to "impose a sentence sufficient, but not greater than necessary," to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."

Kimbrough v. United States, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). The statute requires a sentencing court to consider numerous factors, such as the Guidelines sentencing range, "the nature and circumstances of the offense," "the history and characteristics of the defendant," "any pertinent policy statement" from the Sentencing Commission, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a); see Kimbrough, 552 U.S. at 101.

In a typical case, a guidelines sentencing range embodies the § 3553(a) factors and "reflect[s] a rough approximation of sentences that might achieve § 3553(a)'s objectives." Rita v. United States, 551 U.S. 338, 350 (2007). Of course, the sentencing court "may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends

11

individual Guidelines to apply," or "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations" or "because the case warrants a different sentence regardless."  Id. at 351; see United States v. Diosdado-Star, 630 F.3d 359, 364 (4th Cir. 2011).  A district court's decision to vary from the Guidelines for an outside-the-heartland case is entitled to the "greatest respect." Kimbrough, 552 U.S. at 109.  However, "closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case."  Id. (internal quotation marks omitted).

Here, the district court effectively concluded that a variance was required because the robbery guideline did not reflect the § 3553(a) objectives.  The district court, however, failed to sufficiently explain why it rejected the guideline. Indeed, in each case, the district court's only stated justification for varying from the Guidelines range was that the applicable guideline "fail[s] to take into account the seriousness and the danger and the repetitive quality of these crimes . . . [and] grossly under punish[es] and grossly ignore[s] the dangers of the crimes."  J.A. 134.  In determining how great a variance was required, the court stated that there should be no disparity between the defendants' sentences and

12

that "[the defendants] should receive the same sentence and should be punished equally across the board for what they did." J.A. 131. The district court therefore not only rejected the Sentencing Commission's considered judgment as to the appropriate sentence for the crimes at issue here, but it also rejected one of the foundational principles of the Guidelines themselves--proportionality in sentencing, which "match[es] punishment with culpability." United States v. Miller, 316 F.3d 495, 503 (4th Cir. 2003). While this sort of wholesale rejection of the Guidelines might be permissible post-Booker, it would require a significantly more detailed explanation than given by the district court here.

## B.

In addition to failing to explain its rejection of the Guidelines, the district court also failed to sufficiently explain the sentences imposed. A district court commits procedural error requiring remand when it fails to justify an aspect of a defendant's sentence "with an individualized rationale." United States v. Carter, 564 F.3d 325, 328-29 (4th Cir. 2009). The sentencing court "must make an individualized assessment based on the facts presented" when imposing a sentence, "apply[ing] the relevant § 3553(a) factors to the specific circumstances of the case" and the defendant, and must "state in open court the particular reasons supporting its

13

chosen sentence." Id. at 328 (internal quotation marks omitted). "[A] district court's explanation of its sentence need not be lengthy, but the court must offer some individualized assessment justifying the sentence imposed and rejection of arguments for a higher or lower sentence based on § 3553." United States v. Lynn, 592 F.3d 572, 584 (4th Cir. 2010) (internal quotation marks omitted). The sentencing court's stated rationale must be "tailored to the particular case at hand and adequate to permit meaningful appellate review." Carter, 564 F.3d at 330 (internal quotation marks omitted). In imposing a variance sentence, the district court "must consider the extent of the deviation and ensure that the justification is significantly compelling to support the degree of the variance. . . . [I]t [is] uncontroversial that a major departure should be supported by a more significant justification than a minor one." Gall, 552 U.S. at 50.

In this case, the district court provided the opposite of individualized sentences and explanations. As noted above, the court determined that the Guideline underpunished the crime and that each defendant should receive the same sentence. Thus, except for offering its view of the seriousness of the offense, the district court ignored every other statutory factor and essentially sentenced the crime itself rather than the individual defendants. For example, the court ignored the fact

14

that the defendants, as detailed in the PSR, engaged in different conduct and played different roles during the robbery spree. Lymas, who received a 62-month upward variance, was not armed during the two robberies he participated in, in contrast to Gomez and Newman, who were armed in each of the robberies in which they participated. Lymas also did not point a handgun at a store clerk, unlike Gomez and Newman. Newman, however, involved a juvenile as an accomplice in one of the robberies, which is not something that Lymas or Gomez did. Of course, Gomez was the leader of the group and struck a store clerk with the butt of his pistol; Lymas and Newman were not leaders. And as also spelled out in the PSR, the defendants each had very different criminal histories. The district court failed to explain why these differences would not warrant different sentences.

We conclude that the reasons offered by the district court to justify the sentences were not sufficiently detailed or individualized such that we can conclude that the court considered each defendant "as an individual and [his] case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall, 552 U.S. at 52 (internal quotation marks omitted); Carter, 564 F.3d at 328. As noted previously, the district court simply determined that this particular crime warranted a sentence of

15

140 months for any defendant involved without regard to any other particulars. A sentencing court can consider "the need to avoid unwarranted sentence disparities among defendants," but only where the defendants have "similar records" and "have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The court failed to account for the dissimilar criminal histories and offense conduct of Lymas, Newman and Gomez and instead adopted a cookie-cutter approach that is the antithesis of our individualized sentencing process.

## III.

Accordingly, we vacate the sentences for Lymas, Newman and Gomez, and we remand for resentencing.

<u>VACATED AND REMANDED</u>