**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-7725

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DAVID TROY, III, a/k/a Buck Troy,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence. Terry L. Wooten, Senior District Judge.  (4:04-cr-00811-TLW-4)

Argued:  January 27, 2023                    Decided:  March 29, 2023

Before HARRIS, Circuit Judge, and MOTZ and KEENAN, Senior Circuit Judges.

Affirmed by published opinion.  Senior Judge Motz wrote the opinion, in which Judge Harris and Senior Judge Keenan joined.

**ARGUED:**  Jeremy A. Thompson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Amy Foster Bower, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:** M. Rhett DeHart, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

DIANA GRIBBON MOTZ, Senior Circuit Judge:

David Troy III appeals the denial of his motion for a sentence reduction under § 404 of the First Step Act. Troy argues that the district court abused its discretion when it chose to retain his original sentence despite reducing his Guidelines range to account for his erroneous designation as a career offender. But the First Step Act does not permit a district court to recalculate a defendant's benchmark Guidelines range "in any way other than to reflect the retroactive application of the Fair Sentencing Act." *Concepcion v. United States*, 142 S. Ct. 2389, 2402 n.6 (2022). Arguments based on other changes in law must be considered *after* determining the benchmark Guidelines range that will "anchor" the proceeding. *Id.* Since the Fair Sentencing Act did not affect Troy's original Guidelines range, that range provides the appropriate starting point for our review. Given that starting point, the district court's retention of his original sentence was both procedurally and substantively reasonable. Accordingly, we affirm.

## I.

In 2004, Troy participated in the attempted robbery of Clifton Blackstock, a drug dealer in Georgetown County, South Carolina. Troy and his accomplices planned to impersonate police officers, pull Blackstock over, and rob him of money and drugs. But as Troy approached Blackstock's door armed with a nine-millimeter handgun, he thought he saw Blackstock reach for a gun of his own. Troy fired at Blackstock, hitting him in the face. He and his accomplices fled empty-handed. Blackstock, though severely wounded, survived.

2

Troy pled guilty to conspiracy to possess with intent to distribute 5 grams of cocaine base or 500 grams of cocaine, attempted Hobbs Act robbery, discharging a firearm in furtherance of a drug trafficking crime and a crime of violence, and possession of a firearm as a convicted felon.  As part of his plea agreement, Troy cooperated with the Government's investigation of a group of corrupt North Carolina police officers with whom Troy had committed various crimes, including robbing other drug dealers.

In calculating a recommended sentence, the probation office determined Troy was a career offender based in part on a North Carolina conviction for possession of cocaine with intent to sell for which Troy received a ten-month suspended sentence.  Because of his career offender status, Troy's initial Guidelines range was 382–447 months.  The district court then granted the Government's motion for a four-level downward departure based on Troy's cooperation, which reduced his Guidelines range to between 235 and 293 months of imprisonment.  Ultimately, the court imposed a total sentence of 276 months.

Almost 15 years after his initial sentencing, Troy moved for a sentence reduction under § 404 of the First Step Act of 2018, which gives retroactive effect to "the provisions of the Fair Sentencing Act of 2010 . . . that reduced sentencing disparities between cocaine and crack cocaine offenses."  *United States v. Swain*, 49 F.4th 398, 399 (4th Cir. 2022).  Though the Government opposed Troy's motion, the parties agreed on three key points: (1) Troy was eligible for resentencing under the First Step Act, (2) Troy should not have received a career offender enhancement because, pursuant to *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc), his North Carolina conviction under that state's Structured Sentencing Act was not a valid predicate offense, and (3) absent the *Simmons*

3

error, his Guidelines range would have been 121–151 months.[1]    Nevertheless, the Government urged the district court to decline to reduce Troy's sentence because of his criminal history and the violence of his offense.

The district court agreed.  The court found Troy eligible for resentencing and concluded that, after recalculating Troy's Guidelines range to correct the *Simmons* error, his "ultimate sentencing range would be 121 to 151 months."  But rather than immediately rule on Troy's motion for a sentence reduction, the court invited the parties to file supplemental briefs because it was "considering an upward departure or variance . . . based on the facts set forth in the Presentence Investigation Report and taken into consideration at the original sentencing."

In response, Troy argued that the factors listed in 18 U.S.C. § 3553(a) favored a reduction of his sentence.  He emphasized that his recalculated Guidelines range already accounted for the violence of his offense, that the only other violent crime for which he had been convicted — assault with a deadly weapon inflicting serious injury — occurred when he was 17, that he had never served a sentence longer than six months before the conduct that led to his current incarceration, that the public had already been protected from him for 15 years, that his current age (48) reduced the likelihood of recidivism, and

---

[1] In *Simmons*, we held that a conviction under North Carolina's Structured Sentencing Act is "punishable by imprisonment for a term exceeding one year" only if the defendant himself was exposed to a potential prison sentence greater than one year.  649 F.3d at 243.  At the time of Troy's original sentencing, by contrast, we considered "the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history."  *United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005), *overruled by Simmons*, 649 F.3d at 241.

that in light of his corrected Guidelines range, retaining his original sentence would effectively deny him credit for his cooperation.

The district court listed these arguments and stated that it had "carefully considered" them but concluded that Troy's proposed Guidelines range "fail[ed] to adequately address the egregious conduct in this case, particularly when coupled with [Troy's] criminal history." In addition to highlighting the details of the robbery and Troy's prior record, the court specifically rejected the "proposition that [Troy] ha[d] aged out of . . . violent conduct," in large part because Troy committed the violent acts for which he had been sentenced while in his 30s. The court also recounted "the process" that led to Troy's initial sentence, explaining that because it granted Troy a reduction in his Guidelines range to reward his cooperation, Troy's sentence was significantly lower than his initial sentencing range. The court then explained that when it imposed that sentence, "it had no expectation that, years later, there would be a change in the law that provides for a possible reduction" in Troy's sentence. Accordingly, it denied Troy's motion and retained his original 276-month sentence.

Troy timely appealed, challenging the procedural and substantive reasonableness of the district court's decision.

## II.

Before we can resolve the merits of Troy's appeal, we must consider the effect of the Supreme Court's recent decision in *Concepcion*, 142 S. Ct. 2389.

Prior to *Concepcion*, we held that a district court considering a sentence reduction motion under the First Step Act must correct retroactive Guidelines errors when

5

recalculating a movant's benchmark Guidelines range. *See United States v. Chambers*, 956 F.3d 667, 673–75 (4th Cir. 2020). Relying on *Chambers*, Troy, the Government, and the district court in this case agreed that Troy's Guidelines range had to be recalculated to account for the *Simmons* error at his original sentencing.

But in *Concepcion*, decided after the briefing in this appeal, the Supreme Court held that:

> A district court cannot . . . recalculate a movant's benchmark Guidelines range *in any way* other than to reflect the retroactive application of the Fair Sentencing Act. Rather, the First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range "anchor[s]" the sentencing proceeding. *Peugh v. United States*, 569 U.S. 530, 541, 133 S. Ct. 2072, 186 L.Ed.2d 84 (2013). The district court may then consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark.

142 S. Ct. at 2402 n.6 (emphasis added) (alteration in original).[2]

In other words, *Concepcion* instructs district courts exercising their discretion under the First Step Act to proceed in two steps. First, they must recalculate the movant's Guidelines range "only to the extent it adjusts for the Fair Sentencing Act." *United States v. Shields*, 48 F.4th 183, 192 (3d Cir. 2022); *see also Concepcion*, 142 S. Ct. at 2402 n.6, 2403 n.8. Second, they may (and when raised by the parties, must) consider other legal

---

[2] The parties submitted supplemental briefs as to "what effect, if any, *Concepcion* has on calculating the 'benchmark Guidelines range' in a First Step Act sentencing proceeding." Order, *United States v. Troy*, No. 20-7725, ECF No. 41. Both Troy and the Government maintain that *Concepcion* did not abrogate in any way our previous decision in *Chambers*. For the reasons set forth within, we cannot agree.

and factual changes when deciding whether to impose a reduced sentence. *Concepcion*, 142 S. Ct. at 2396, 2402 n.6.

Thus, while a district court may consider other changes in the law when determining what reduction, if any, is appropriate in an individual case, the proper "benchmark" for the district court's analysis (and for our review) is the impact of the Fair Sentencing Act on the defendant's Guidelines range. *Id.* at 2402 & n.6. Because *Chambers* instructed district courts to recalculate a movant's Guidelines range based on "intervening case law" unrelated to the Fair Sentencing Act, 956 F.3d at 672–75, that holding of *Chambers* does not survive *Concepcion*.

The district court did not err in *acknowledging* the impact of the *Simmons* error on Troy's Guidelines range — indeed, it was necessary to do so. *Concepcion*, 142 S. Ct. at 2404. But the court should not have done so until *after* it determined the appropriate starting point for Troy's First Step Act proceedings. *Id.* at 2402 n.6. The correct benchmark was Troy's original Guidelines range, 235 to 293 months, which was unaffected by the retroactive application of the Fair Sentencing Act.[3]

### III.

With those principles in mind, we turn to the district court's denial of Troy's motion for a sentence reduction, which we review for abuse of discretion. *United States v. Reed*, 58 F.4th 816, 819 (4th Cir. 2023). A district court abuses its discretion if its decision to

---

[3] Though the district court erred by recalculating Troy's benchmark Guidelines range to correct the *Simmons* error, that error was harmless. Even using the lower Guidelines range produced by correcting the *Simmons* error as its benchmark, the court still found Troy's original sentence warranted.

7

retain or reduce a sentence under the First Step Act is procedurally or substantively unreasonable. *Id.* at 820; *Swain*, 49 F.4th at 399.

A.

We begin by considering whether the district court's denial of Troy's motion was procedurally reasonable. In resolving a motion under the First Step Act, a district court's discretion is broad and its burden light. *Concepcion*, 142 S. Ct. at 2404. District courts are not required to modify a sentence "for any reason" and may reject arguments they consider unconvincing in "a brief statement of reasons" and "without a detailed explanation." *Id.* at 2402, 2404. But when district courts consider such motions, they must still "sentence the whole person before them," "explain their decisions," and "demonstrate that they considered the parties' arguments." *Id.* at 2398, 2404. Thus, for its resolution of a First Step Act motion to be procedurally reasonable, a district court must "consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, determine—following the Fair Sentencing Act—whether a given sentence remains appropriate in light of those factors, and adequately explain that decision." *United States v. Collington*, 995 F.3d 347, 360 (4th Cir. 2021).

Troy contends that the district court committed three procedural errors. We address each in turn.

1.

Troy initially claims that the district court should have responded more thoroughly to his arguments about the length of his prior sentences, the amount of time he had already served, and his current age. But the court considered each of these arguments and found

8

them unconvincing. The court explained that it had considered "the length of [Troy's] prior sentences," that "the public has been protected from [Troy] for almost 15 years," and that "his current age reduces the likelihood of recidivism." It then explained why it believed the nature of the offense and Troy's lengthy and sometimes violent criminal history justified his current sentence. Moreover, in addressing Troy's arguments related to his youth at the time of his previous assault conviction, the Court pointed to the conduct underlying his current conviction (which occurred when Troy was in his 30s) to explicitly reject the "proposition that [Troy] has aged out of . . . violent conduct."

This explanation satisfies the "low bar" *Concepcion* set for district courts considering First Step Act motions. *Reed*, 58 F.4th at 823. The court was not required to "make a point-by-point rebuttal of the parties' arguments." *Concepcion*, 142 S. Ct. at 2405. It is enough that its opinion made clear *why* it found Troy's arguments unpersuasive. *See Reed*, 58 F.4th at 823–24.

Troy also asserts that the district court should have explicitly addressed his contention that, had he been charged with attempted murder, his Guidelines range would have been comparable to the lower Guidelines range produced by correcting the *Simmons* error. But Troy offered this counterfactual in support of his larger argument that the Guidelines already accounted for the seriousness of his offense. The district court addressed that argument at length, concluding that the lower Guidelines range that would have applied absent the *Simmons* error "fail[ed] to adequately address the egregious conduct in this case," particularly given Troy's criminal history. Having rejected Troy's

9

"central thesis," the court was not obliged "to address separately each supporting data point marshalled on its behalf." *United States v. Nance*, 957 F.3d 204, 214 (4th Cir. 2020).

2.

Troy next argues that the district court failed to provide a sufficient explanation for rejecting "the First Step Act's resentencing mechanism" and the lower Guidelines range that correcting the *Simmons* error would have produced. Br. for Appellant at 20–21. In particular, he objects to the court's remark that "[a]t the time the Court imposed this 23-year sentence, it had no expectation that, years later, there would be a change in the law that provides for a possible reduction."

Of course, the denial of a First Step Act motion may be unreasonable if based on a disagreement with Congress' decision to eliminate the sentencing disparity between offenses involving crack and powder cocaine. *See Swain*, 49 F.4th at 403; *United States v. Smith*, 959 F.3d 701, 703 (6th Cir. 2020). But eliminating that disparity had no impact here. Accordingly, the district court's rejection of this argument does not manifest any disagreement with Congress' "central goal" in enacting the First Step Act. *Concepcion*, 142 S. Ct. at 2402.

Nor did the district court refuse to consider Troy's argument regarding the *Simmons* error in his Guidelines range. Rather, the court emphasized the "process that occurred after [Troy] pled Guilty," to explain why it believed Troy's original sentence was "the 'right' sentence," even though correcting the *Simmons* error would have produced a lower Guidelines range. *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1966 (2018). Thus, the

court found that Troy's 23-year sentence was "still appropriate today when applying the § 3553(a) factors." That finding was procedurally reasonable.

3.

Third, relying on *United States v. Lymas*, 781 F.3d 106 (4th Cir. 2015), Troy asserts that the district court failed to sentence him individually. Troy bases this argument on the district court's comment that it would "impose the same sentence . . . on this defendant or any other defendant who committed similar conduct with a similar criminal background."

In *Lymas*, the district court imposed the same sentence on three codefendants, despite their different roles in the offenses and distinct Guidelines ranges. *Id.* at 109–11. It reasoned that the defendants "should receive the same sentence and should be punished equally across the board for what they did." *Id.* at 111. We vacated all three sentences, explaining that the court had ignored many of the § 3553(a) factors and "essentially sentenced the crime itself rather than the individual defendants." *Id.* at 113.

Here, by contrast, examination of the record demonstrates that the district court sentenced Troy individually. In denying Troy's motion, the court emphasized Troy's *specific* role in the robbery and his *individual* criminal history. Indeed, at Troy's original sentencing, the court explicitly stated that the different "circumstances" of Troy and his codefendants would (and did) produce different sentences. The court explained at the time that Troy deserved the highest sentence because he was the one "who fire[d] the shots." Taken in context, the court's comment was appropriately directed at justifying Troy's sentence, not at "sentenc[ing] the crime itself." *Lymas*, 781 F.3d at 111.

11

B.

Troy also challenges the substantive reasonableness of his sentence. To determine whether the denial of a First Step Act motion is substantively reasonable, we consider whether, under the totality of the circumstances, the district court "abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *Reed*, 58 F.4th at 820 (quoting *Swain*, 49 F.4th at 402). "[D]isagreement with how a district court balances the § 3553(a) factors is insufficient to overcome the district court's discretion." *Swain*, 49 F.4th at 403. Because Troy's original Guidelines range of 235 to 293 months is the appropriate benchmark for our review, the 276-month sentence retained by the district court is presumptively reasonable. *See United States v. Blue*, 877 F.3d 513, 519–20 (4th Cir. 2017).

Troy relies on *United States v. Howard*, 773 F.3d 519 (4th Cir. 2014), to argue that the district court placed too much weight on his conviction for an assault he committed when he was 17. But unlike the defendant in *Howard*, Troy's juvenile offense was "not the sole, or even primary, basis for the district court's decision." *See Nance*, 957 F.3d at 216 (distinguishing *Howard*). Here, the district court emphasized not just Troy's juvenile assault conviction, but his "lengthy criminal record" that extended into adulthood. Moreover, the violence of the offense for which Troy was convicted increased the relevance of his earlier assault conviction. By contrast, the crime for which Howard was sentenced did not involve "any assaultive or other physically violent behavior." *Howard*, 773 F.3d at 535 n.12. Finally, while in *Howard* the district court deviated upwards from

12

the Guidelines range of 120–121 months to impose a life sentence, *id.* at 524, here the district court did not deviate from the proper Guidelines range at all.

Troy also claims that the district court's emphasis on the violence of the offense "cannot withstand serious scrutiny." Br. for Appellant at 29. He argues that if he had been sentenced for attempted murder, his Guidelines range would have been "comparable to his correct sentencing range in this case." *Id.* But again, Troy's "correct sentencing range" for the purposes of his First Step Act motion is 235 to 293 months. Furthermore, the district court did not rely solely on the violence inherent in shooting a man in the face. Instead, the court considered the shooting *in conjunction* with "the highly-orchestrated attempted robbery itself" and Troy's "prior conviction for violent conduct." Moreover, Troy's hypothetical ignores the complexity of the sentencing process. For example, if Troy were sentenced for attempted murder *and* discharging a firearm in furtherance of a drug trafficking crime, his Guidelines range would be ten years higher than if he were sentenced for attempted murder alone. *See* 18 U.S.C. § 924(c); U.S.S.G. § 2K2.4(b). Given these facts, the weight the district court placed on the violence of Troy's offense was substantively reasonable.

## IV.

The district court considered Troy's arguments and provided an adequate explanation for retaining his original sentence. Because its denial of Troy's motion was both procedurally and substantively reasonable, the judgment of the district court is

*AFFIRMED*.

13