**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-6829

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

DANNY DAMON SMITH, a/k/a Duke,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:07-cr-00433-HEH-1)

Argued:  May 3, 2023                                                Decided:  August 3, 2023

Before DIAZ, Chief Judge, RUSHING, Circuit Judge, and FLOYD, Senior Circuit Judge.

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Rushing and Senior Judge Floyd joined.

**ARGUED:**  Robert James Wagner, ROBERT J. WAGNER PLC, Richmond, Virginia, for Appellant.  Daniel J. Honold, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:**  Jessica D. Aber, United States Attorney, Peter S. Duffey, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

DIAZ, Chief Judge:

Danny Smith is fifteen years into his twenty-year prison sentence for conspiring to distribute crack cocaine. A few years after he was sentenced, Congress passed the Fair Sentencing Act, which reduced the crack-to-powder cocaine disparity. If sentenced today, Smith's mandatory minimum would be half his current sentence.

Under the retroactivity provisions of the First Step Act, Smith moved for a sentence reduction to time served. The district court denied his motion, determining that twenty years remained appropriate. Smith appealed, claiming among other things that the district court miscalculated his Guidelines range and that our recent decision in *United States v. Swain*, 49 F.4th 398 (4th Cir. 2022), reveals substantive errors in the district court's analysis.

Because we find no reversible error, we affirm.

I.

A.

Facing a five-count indictment, including a charge of murdering an FBI informant, Smith pleaded guilty to a single count of conspiracy to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (2006). His presentence report attributed to him 270.63 grams of cocaine base, colloquially known as "crack cocaine," and calculated his criminal history category as V.

At that time, the Sentencing Guidelines subjected "a drug trafficker dealing in crack cocaine . . . to the same sentence as one dealing in 100 times more powder cocaine."

2

*Kimbrough v. United States*, 552 U.S. 85, 91 (2007). Had Smith been held responsible for 270.63 grams of powder cocaine, his Sentencing-Guidelines range would have been 63 to 78 months in prison, with no statutory minimum. But since Smith was convicted of conspiracy to distribute crack cocaine, his presentence report calculated a Guidelines range of 188 to 235 months. Smith had a prior felony drug conviction, and the government gave notice of its intent to enhance his penalties under 21 U.S.C. § 851, resulting in a statutory minimum of 240 months.

The government also sought to apply a first-degree murder cross-reference for the killing of an FBI informant. That cross-reference would have resulted in a Guidelines range of life imprisonment. The district court held a hearing and determined the evidence didn't support the cross-reference. The court stated that it had "very strong suspicions about [Smith's] involvement in killing [the informant], but, unfortunately, the law doesn't allow me to impose a sanction unless it's proven by a preponderance of the evidence, which it is not in this case." J.A. 742.

The court sentenced Smith to the statutory minimum at the time: 240 months' imprisonment and 10 years of supervised release.

B.

Congress subsequently passed the Fair Sentencing Act of 2010, which modified the disproportionate sentences for crack cocaine offenses. *See* Pub. L. No. 111–220, 124 Stat. 2372. The United States Sentencing Commission updated the Sentencing Guidelines for crack cocaine accordingly. If Smith had been charged under the Fair Sentencing Act's reforms, his Guidelines range would have been 151 to 188 months, with a statutory

3

mandatory minimum of 120 months. But the Fair Sentencing Act wasn't yet retroactive, *see United States v. Bullard*, 645 F.3d 237, 248–49 (4th Cir. 2011), so Smith's sentence remained.

Eight years later, Congress enacted the First Step Act, which authorized (but didn't mandate) district courts to "impose a reduced sentence" for qualifying movants as if the crack-cocaine modifications "were in effect at the time the covered offense was committed." Pub. L. No. 115-391 ("First Step Act"), § 404(b), 132 Stat. 5194, 5222 (2018).

1.

Smith sought relief under § 404(b) of the First Step Act, asking the district court to reduce his term of imprisonment to time served and his supervised-release term to four years.

The government agreed that Smith was eligible for a sentence reduction but opposed the motion. The government noted that Smith's attributed quantity of crack cocaine of 270.63 grams was about 9 grams below the 280-gram threshold "which would be sufficient to trigger the mandatory minimum sentence." J.A. 775. It highlighted Smith's criminal history and his "disturbing pattern of disruptive and violent behavior while in federal prison." *Id.* The government also reminded the court of its "strong suspicion" that Smith participated in the informant's murder. *Id.*

Smith replied that factoring in the court's "strong suspicion" would be improper. He claimed his "criminal history should present no barrier to relief," since he had only "a single adult felony conviction" before this offense. J.A. 843.

4

Smith also compared his sentence to those of his co-conspirators, arguing his "drug distribution activities . . . appeared to be less serious than the other[s']," and that ten of his co-defendants received prison sentences of 136 months or less. J.A. 844–45. Smith pointed to his "significant turn towards rehabilitation," noting that he "has not had a single disciplinary infraction in 6 years" and that he was working to earn his GED. J.A. 847.

2.

The district court denied Smith's motion for a sentence reduction.

The court first recalculated Smith's Guidelines range under the Fair Sentencing Act. It found that Smith's "mandatory minimum sentence is now 10 years, his adjusted offense level of 28 produces a guideline range of 130–162 months, and his mandatory minimum term of supervised release is now 8 years." J.A. 868. But the court also noted that Smith's existing "240-month sentence falls well within the current statutory maximum of lifetime imprisonment." *Id.*

The court acknowledged that Smith had a clean disciplinary record for the past six years. But it also found that Smith's "behavioral record [in prison] in the preceding years was troublesome," listing over ten infractions ranging from "failing to stand count" to "possessing a dangerous weapon" and "fighting with an inmate." J.A. 869–70.

The court next adopted the government's argument that Smith's attributable drug weight was "just nine grams shy" of the 280-gram statutory minimum. J.A. 869. It also reiterated its "strong suspicion" that Smith took part in the informant's murder, though it didn't state it weighed that in its analysis. J.A. 867.

5

Ultimately, the court concluded that "[a] modification of [Smith]'s sentence fails to satisfy the relevant § 3553(a) factors" and denied relief.  J.A. 870.

This appeal followed.

## II.

We review the district court's denial of § 404(b) relief for abuse of discretion. *United States v. Reed*, 58 F.4th 816, 819 (4th Cir. 2023).  We will affirm "unless the court's decision is procedurally or substantively unreasonable." *Id.* at 820.  Our review uncovers no reversible error.

## A.

We begin by examining the district court's judgment for procedural reasonableness. *Id*.  A district court commits procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* (cleaned up).

Smith's main procedural attack is that the district court erred in calculating his Guidelines range as 130 to 162 months, even though that was the range he asserted to the district court.  *See* J.A. 760 (Smith's § 404 Motion).  He now claims the correct range is 110 to 137 months, based on a 2010 change from the Sentencing Commission that revised calculations of criminal history.  Since Smith didn't make this argument to the district court, it's forfeited, absent plain error.  *See United States v. Coby*, 65 F.4th 707, 712 (4th

6

Cir. 2023). Our recent decision in *United States v. Troy*, 64 F.4th 177 (4th Cir. 2023), shows why there was no plain error.[1]

When exercising their discretion to reduce a sentence under the First Step Act, district courts must calculate the Guidelines range "as if the Fair Sentencing Act's amendments had been in place at the time of the offense." *Concepcion v. United States*, 142 S. Ct. 2389, 2402 n.6 (2022). Fleshing out *Concepcion*'s directive, we've articulated a two-step process for adjudicating a § 404 motion. "First, [district courts] must recalculate the movant's Guidelines range only to the extent it adjusts for the Fair Sentencing Act. Second, they may (and when raised by the parties, must) consider other legal and factual changes when deciding whether to impose a reduced sentence." *Troy*, 64 F.4th at 184 (cleaned up).

Put simply, "the proper 'benchmark' for the district court's analysis (and for our review) is the impact of the Fair Sentencing Act on the defendant's Guidelines range." *Id.* This includes the Sentencing Commission amendments passed in response to the Fair Sentencing Act's mandate. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 8, 124 Stat. 2372, 2374 (directing the Sentencing Commission to "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with [the Act]"). Any other factual and legal changes affecting the Guidelines range are examined after this benchmark calculation.

---

[1] We decided *Troy* after Smith submitted his briefs, so we take this opportunity to reiterate the proper standard for calculating the Guidelines range under a § 404 motion.

7

Under the relevant amendments,[2] Smith's attributed quantity of 270.63 grams of crack cocaine yields a base offense level of 30. U.S.S.G. § 2D1.1(c)(5) (2011). The two-level enhancement imposed because Smith possessed a firearm during the commission of the drug offense cancels out the two-level decrease for acceptance of responsibility. Together, Smith's offense level of 30 and his criminal-history category of V result in a baseline Guidelines range of 151 to 188 months. The criminal-history revisions Smith now invokes would be considered in step two, had he raised them below.

The district court calculated Smith's benchmark Guidelines range as 130 to 162 months—lower than the correct range. It appears to have used the current drug quantity table, which yields a base offense level of 28 for Smith's attributed quantity of crack cocaine. *See* U.S.S.G. § 2D1.1(c)(6) (2021). But that table reflects amendments unrelated to the Fair Sentencing Act. *See* U.S. Sent'g Guidelines Manual app. C, amend. 782 (U.S. Sent'g Comm'n 2014) (lowering the base offense levels even further). The district court's calculation is thus an improper benchmark.

But under the plain-error standard, we reverse only when there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (cleaned up). Since the district court denied relief even under the incorrect lower range, there's no

---

[2] Specifically, Amendment 750, which lowered the base offense levels associated with different quantities of crack cocaine, and Amendment 759, which made those levels retroactive. *See* U.S. Sent'g Guidelines Manual app. C, amend. 750, 759 (U.S. Sent'g Comm'n 2011).

reasonable probability the outcome would have been different had the court recognized its mistake. *See Troy*, 64 F.4th at 184 n.3 (finding an erroneous lower benchmark calculation harmless).

Smith's other attacks on procedural reasonableness lack merit. For example, he claims the court "failed to adequately assess [his] unwarranted disparity argument." Appellant's Br. at 23. But the district court's decision mentions "sentencing disparities," and explains why Smith's sentence is "not a departure from sentences that many other defendants today would receive for similar conduct." J.A. 870–71. This explanation is enough. *See Concepcion*, 142 S. Ct. at 2405 ("All that is required is for a district court to demonstrate that it has considered the arguments before it.").

## B.

Finding no reversible procedural error, we examine the district court's decision for substantive reasonableness. This review is "highly deferential." *United States v. Bond*, 56 F.4th 381, 385 (4th Cir. 2023). It "should not be overly searching," because "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *Concepcion*, 142 S. Ct. at 2404 (cleaned up).

But our deference isn't unquestioning. We must "consider the totality of the circumstances to determine whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Swain*, 49 F.4th 398, 402 (4th Cir. 2022) (cleaned up).

Although we can't "presume that a sentence above the applicable Guidelines range is unreasonable," we "may consider the extent of the deviation" between the original

9

sentence and the recalculated range. *Id.* at 402–03 (cleaned up). "When the variance is a substantial one[,] we must more carefully scrutinize the reasoning offered by the district court in support of the sentence. . . . The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Id*. at 403 (cleaned up).

1.

In *Swain*, we overturned a district court's denial of a § 404 motion for lack of substantive reasonableness. Swain was sentenced to 324 months' imprisonment for a crack-cocaine offense. *Id.* at 400. He moved for a reduced sentence under the First Step Act, noting the top of his recalculated Guidelines range was 62 months below his original sentence. *Id.* The district court denied the motion, reasoning that "the § 3553(a) factors did not support reducing [Swain]'s sentence given the aggravated offense conduct." *Id.* But we vacated and remanded because the district court failed to adequately support its "effectively" variant sentence. *Id.* at 403–04.

We found that the "district court's failure to justify [the 62-month] variance [was] particularly troubling given that *Congress* was the actor that reduced [Swain]'s guideline range through the passage of the First Step Act." *Id.* at 403 (cleaned up). Since Congress intended sentence reductions to be "one of [the First Step Act's] primary purposes," we reviewed the district court's decision "in light of [that] remedial purpose." *Id.*

Under that lens, we determined the district court's analysis was substantively unreasonable because it "relied on largely the same factual basis to deny [Swain]'s motion for a reduced sentence as it did to impose its initial bottom-of-the-Guidelines sentence—

despite the fact that [Swain]'s amended Guidelines range decreased by five to ten years." *Id.* Additionally, "the court placed too little weight on the remedial aims of the First Step Act." *Id.*

Smith claims that the district court here made the same errors.[3] He notes that the district court didn't explicitly mention that Smith's 240-month sentence represents a significant upward variance from his post-First Step Act Guidelines range. Nor did the court directly discuss the remedial aims of the First Step Act.

But we decline to read *Swain* as requiring district courts to robotically tick through these effects of the First Step Act in sentencing. To do so would impose conditions beyond our modest "requirement that [the district court] adequately explain its sentencing decision." *United States v. Collington*, 995 F.3d 347, 358 (4th Cir. 2021), *abrogated on other grounds by Concepcion*, 142 S. Ct. 2389.

Reviewing the totality of the circumstances, we're convinced that the district court weighed the relevant considerations and adequately explained its conclusion. First, the court's recalculation of Smith's Guidelines range signals it understood there was a disparity between the new Guidelines range and the original sentence—in fact, as we explained above, the district court thought the gap was bigger than it actually was. Next, the court discussed the history of the First Step Act, noting it must make a "holistic resentencing

---

[3] We calendared this case for the express purpose of considering how *Swain* applied here. Yet even though Smith relied repeatedly on *Swain* in his opening brief, the government's response failed to cite it. We remind the government—and all other litigants—that when we ask for the parties' views on the import of a case to the appeal, we expect the parties to address it.

11

determination as to whether the original sentence remains appropriate *in light of the Fair Sentencing Act's reforms*." J.A. 865 (quoting *Collington*, 995 F.3d at 355) (emphasis added). Sending this case back for the district court to explicitly state what it implicitly considered would accomplish nothing.

In denying relief, the district court considered Smith's "fourteen disciplinary violations in three different Bureau of Prisons facilities," which included possession of a dangerous weapon and multiple instances of fighting.[4] J.A. 869–70. When weighed against Smith's positive improvements, the court concluded his "behavior before and after his confinement shows a flagrant disrespect for the law and exacerbates this Court's concern for the need to protect the public." J.A. 870.

The district court also noted that the amount of cocaine attributable to Smith was "just nine grams shy" of the increased statutory minimum. J.A. 869; *see* 21 U.S.C. § 841(b)(1)(A)(iii). Combined with Smith's infractions in prison, the court determined that a "modification of [Smith]'s sentence fails to satisfy the relevant § 3533(a) factors." J.A. 870. Considering that the First Step Act "leaves much to the [district-court] judge's own

---

[4] The district court in *Swain* also discussed some of the defendant's misconduct in prison. *See United States v. Swain*, No. 4:07-CR-62-D, 2021 WL 298189, at *2 (E.D.N.C. Jan. 28, 2021) ("[Swain] has been sanctioned for possessing unauthorized items, failing to follow safety regulations in 2009, using marijuana and suboxone in 2016, and extorting/blackmail/protecting in 2019."). But the *Swain* opinion doesn't mention these disciplinary violations.

professional judgment," we're satisfied with its rationale. *Concepcion*, 142 S. Ct. at 2404 (cleaned up).[5]

We pause to address a wrinkle not raised by either party. The district court wrote that Smith "was attributed with an amount of cocaine base very close to the ceiling of [280 grams for] the sentencing reduction. His original sentence [of twenty years] is therefore not a departure from sentences that many other defendants *today* would receive for similar conduct." J.A. 870–71 (emphasis added).

For defendants with a prior conviction for a serious drug felony (like Smith), the Fair Sentencing Act set the statutory minimum for possession with intent to distribute 280 grams or more of crack cocaine at twenty years. *See* 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii) (2010). But the First Step Act reduced that to fifteen years. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2018). So if a similarly situated defendant was convicted today of that offense, they would face a statutory mandatory minimum five years below Smith's current sentence.

It's possible the district court was mistaken about the current statutory exposure for Smith's offense, or unreasonably believed that a five-year upward variance for that conviction is common. But there are other reasonable interpretations of the district court's language. It may have been comparing other defendants who shared Smith's

---

[5] Smith's reliance on *United States v. Johnson*, 26 F.4th 728 (6th Cir. 2022), an out-of-circuit case with fundamental similarities to *Swain*, fails to persuade for the same reasons.

"troublesome" conduct while in prison. J.A. 869. Or perhaps the phrase "many other defendants today," J.A. 871, refers to defendants who, like Smith, seek relief under § 404(b) of the First Step Act. Those defendants would be subject to the Fair Sentencing Act's statutory minimum of twenty years. *See* First Step Act § 404(b) (a district court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed").

Typically, when we "cannot tell" if the district court acted reasonably, we vacate and remand for reconsideration. *Reed*, 58 F.4th at 824. But Smith didn't develop this argument in his opening brief, saying only that the district court's observation "is simply not an accurate reflection of sentencing practices today." Appellant's Br. at 18. It's thus forfeited. *See Mowery v. Nat'l Geospatial-Intel. Agency*, 42 F.4th 428, 433 n.5 (4th Cir. 2022) (noting that a party forfeits an argument by failing to develop it in the opening brief, "even if its brief takes a passing shot at the issue" (cleaned up)). And since review of a district court's decision to grant or deny relief under § 404 is "highly deferential," *Bond*, 56 F.4th at 385, we decline to consider this issue.

2.

Next, Smith contends that the district court erred when it weighed its "suspicions" of his involvement in the informant's murder to deny a sentence modification. But we see no evidence that the court's hunch infected its analysis. While the district court did mention its "strong suspicion" that Smith took part in the homicide, it also reiterated that it "was not convinced that [the evidence] was sufficient to implicate [Smith]." J.A. 867. And the

14

district court never brought the issue up again, let alone in its discussion of the § 3553(a) factors.

Smith insists that the district court's mention of "the circumstances surrounding the offense that were raised at sentencing," J.A. 870, shows that it considered the informant's murder. But many circumstances of Smith's offense were raised at sentencing, including his criminal history and the conduct of his co-conspirators. Attempting to parse out the specific meaning of the court's broad statement would approach the "overly searching" review that the Supreme Court has prohibited. *Concepcion*, 142 S. Ct. at 2404.

3.

Smith's other arguments don't convince. He claims the district court failed to give appropriate weight to his lack of criminal history and his behavioral improvement. But these are "disagreement[s] with how [the] district court balance[d] the § 3553(a) factors," which are "insufficient to overcome the district court's discretion." *Swain*, 49 F.4th at 403.

Smith also asks us to "be sensitive" to the fact that "[u]pward variances for sentences imposed in cocaine base cases today are extremely rare," citing 2020 and 2021 statistics from the Sentencing Commission. Appellant's Br. at 20. But we've recognized that "there are always variations in sentencing, which is a quintessentially fact-specific and multifaceted exercise." *United States v. Friend*, 2 F.4th 369, 382 (4th Cir. 2021). So "comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized." *Id.* at 382–83 (cleaned up).

Smith's use of aggregate sentencing data invites such perilous comparisons. While we recognize the disparity between Smith's new Guidelines range and his current sentence, the district court properly explained why it remained substantively reasonable.

### III.

"The Fair Sentencing Act and First Step Act, together, are strong remedial statutes, meant to rectify disproportionate and racially disparate sentencing penalties." *Swain*, 49 F.4th at 403 (cleaned up). The district court considered these remedial aims, as well as all other nonfrivolous arguments, before exercising its broad discretion to deny sentencing relief. Its decision is

*AFFIRMED.*

16