**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-5025**

_____

UNITED STATES OF AMERICA,

　　　　　Plaintiff - Appellee,

　　v.

BEVERLY ALLEN BAKER,

　　　　　Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.　James C. Dever, III, Chief District Judge.　(5:11-cr-00237-D-1)

_____

Submitted:　September 23, 2013　　Decided:　September 26, 2013

_____

Before GREGORY, DAVIS, and WYNN, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

Sean P. Vitrano, VITRANO LAW OFFICES, PLLC, Wake Forest, North Carolina, for Appellant.　Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Yvonne V. Watford-McKinney, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Beverly Allen Baker was convicted by a jury of conspiracy to distribute 280 grams or more of cocaine base (crack) in violation of 21 U.S.C. § 846 (2006), and nine counts of crack distribution, 21 U.S.C. § 841 (2006). She was sentenced to life imprisonment. Baker appeals her sentence, contending that the district court miscalculated her Guidelines range. We agree that the court made several procedural errors which cannot be deemed harmless. United States v. Savillon-Matute, 636 F.3d 119, 123-24 (4th Cir. 2011). Consequently, we vacate the sentence and remand for resentencing.

Testimony at Baker's trial established that she sold crack from her home between 2002 and 2011. At times, her boyfriend, her brother, and her sister also sold crack there. Government witnesses included two of her regular customers and several of her suppliers. In the presentence report, the probation officer attributed nineteen kilograms of crack to Baker based on written estimations by her suppliers of the amounts they sold to her. This information resulted in a recommended base offense level of 38. U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (2012). The probation officer also recommended offense level increases for possession of a firearm, see USSG § 2D1.1(b)(1), for being a leader or organizer in the offense, see USSG § 3B1.1(a), for involving minors while

2

having an aggravated role, see USSG § 2D1.1(b)(14)(B)(i), and for obstruction of justice, see USSG § 3C1.1. Baker was in criminal history category III. Her Guidelines range was life imprisonment.

At the sentencing hearing, the government asserted that supplier Wayne Vick's trial testimony, as opposed to his written statements, supported a finding that he supplied Baker with about six kilograms of crack rather than the fourteen kilograms recommended in the presentence report. The government argued that, even with the reduction, the total quantity of crack attributable to Baker was more than 8.4 kilograms of crack. Without making specific findings to determine the quantity of crack attributable to Baker, the district court agreed that base offense level 38 applied. The court also overruled Baker's objections to the remaining sentence enhancements. The court rejected Baker's request for a downward variance to a sentence of thirty years and imposed a life sentence.

We review sentences for procedural and substantive reasonableness under an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). Miscalculation of the Guidelines range is a significant procedural error. Id. We review the district court's factual findings for clear error and

its legal determinations de novo.  United States v. Llamas, 599 F.3d 381, 387 (4th Cir. 2010).

Baker first argues on appeal that the amount of crack attributed to her was clearly erroneous because it was based on unreliable evidence.  The government must prove the drug quantity attributable to the defendant by a preponderance of the evidence.  United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002).  The district court may rely on information in the presentence report unless the information is inaccurate or unreliable.  Id.  A district court's findings on drug quantity are generally factual in nature, and therefore are reviewed by this court for clear error.  Id.  In determining the amount of drugs attributable to the defendant, "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."  USSG § 2D1.1 cmt. n.5.

Here, the district court estimated that Baker bought and sold more than 8.4 kilograms of crack, the threshold amount for base offense level 38.  Baker argues that the district court's finding that she was responsible for more than 8.4 kilograms of crack was not supported by the evidence and that Wayne Vick's testimony, in particular, was "so vague and inconclusive as to preclude any reliable estimate of the quantity of crack he supplied to Baker from 2002 to 2007 or

4

2008." We conclude that Baker is correct that the evidence of the amount of crack Wayne Vick supplied to her was inconsistent and the inconsistency was not resolved by the district court, with the result that the district court's finding concerning the drug amount was inadequate.

In the presentence report, based on Wayne Vick's written statement, the probation officer recommended that Wayne Vick supplied Baker with two ounces of crack every two weeks in 2002, and four ounces of crack every two weeks from 2003 to 2008, for a total of 14.9 kilograms of crack. At trial, Wayne Vick testified briefly that he started selling crack to Baker in 2002 and that he sold her one or two ounces every one or two or three weeks. Wayne Vick said he sold to her for, "A couple years. From '02 through probably '07, '08," and that the amounts he sold her were not always the same. He said that, "eventually it got to like four [ounces] on the end." The government did not inquire how long Wayne Vick sold four-ounce quantities to Baker. However, the government represented that, when Wayne Vick said "at the end," he meant the entire last year that he sold crack to Baker.

On appeal, the government has changed its calculation again, and estimates in its brief that Wayne Vick sold Baker at least 2.2 kilograms of crack. The government also suggests in its brief a recalculation of the 2.4 kilograms of crack supplied

5

by Malcolm Dowdy as stated in the presentence report, based on information that he sold her two ounces of crack every two weeks for twenty-two months. Dowdy's sales to Baker were not addressed at sentencing.[*] The government now suggests that Dowdy sold Baker 5.4 kilograms of crack for twenty-four months based on his trial testimony that he sold Baker two ounces of crack every week from November 2002 to October 2003.

Using its current estimates of the amounts Wayne Vick and Dowdy sold to Baker, which total 7.6 kilograms of crack, and in light of additional testimony by James Vick, Shawn Barber, and Michael Burrell, the government argues that the evidence supported a finding that 8.4 kilograms of crack was properly attributed to Baker. However, to avoid double counting, the probation officer did not count crack sold by Barber, who testified that Sabrina sometimes received crack from Baker, but did not say either he or Sabrina sold crack to Baker. Also to avoid double counting, the probation officer did not include crack Burrell bought from Baker between 2006 and 2009, before he became a confidential informant. Adding the 2.04 kilograms of crack James Vick said he sold to Baker to the government's

_____

[*]Baker objected to the 2.4 kilograms of crack Dowdy sold her as reported in the presentence report, but did not challenge it at sentencing. On appeal, Baker does not contest the 2.4 kilograms of crack attributed to her through Dowdy.

6

current estimate would result in a total of 9.6 kilograms of crack. However, this calculation was not presented to the district court. When the resolution of a Guidelines issue depends on a factual determination, the district court must make that finding in the first instance. United States v. Davis, 679 F.3d 177, 183 (4th Cir. 2012).

Both Wayne Vick and Dowdy gave significantly different information about the amount of crack they sold to Baker to the probation officer and in their trial testimony. Because the district court's factual finding that Baker was responsible for 8.4 kilograms of crack is unsupported by reliable evidence, and is thus clearly erroneous, we conclude that resentencing is required for the district court to make new findings to establish Baker's base offense level.

Baker also challenges the enhancement for possession of a firearm during the offense. A two-level increase is authorized under USSG § 2D1.1(b)(1) if "a dangerous weapon (including a firearm) was possessed" during the commission of the offense of conviction, "unless it is clearly improbable that the weapon was connected to the offense." USSG § 2D1.1 & cmt. n.11(A). "[P]ossession of the weapon during the commission of the offense is all that is needed to invoke the enhancement." United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997). The defendant has the burden of showing that a connection between

7

his possession of a firearm and his drug offense is "clearly improbable." United States v. Slade, 631 F.3d 185, 189 (4th Cir. 2011).

None of the government's witnesses were asked at trial whether they had seen Baker in possession of a firearm. However, many of the same witnesses testified before the grand jury that they had seen a firearm in Baker's purse or in her home. A preponderance of the evidence established that Baker possessed a firearm during the conspiracy and she did not show that it was clearly improbable that the gun was connected to the offense.

Baker contends that the district court clearly erred in finding that she was an organizer or leader in the offense. The district court's determination that a defendant is a leader in the offense is a factual finding reviewed for clear error. United States v. Cameron, 573 F.3d 179, 184 (4th Cir. 2009). A defendant qualifies for a four-level adjustment if he or she "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). A "participant" is "a person who is criminally responsible for the commission of the offense," whether or not he has been convicted. USSG § 3B1.1 cmt. n.1. "Leadership over only one other participant is sufficient as long as there is some control exercised." United States v. Rashwan, 328 F.3d

8

160, 166 (4th Cir. 2003). In drug cases, customers who are solely end users of drugs are not participants. United States v. Egge, 223 F.3d 1128 (9th Cir. 2000); United States v. Baez-Acuna, 54 F.3d 634, 639 (10th Cir. 1995).

Baker argues that there was no evidence that she "planned or organized the drug trafficking of others or exercised control and authority over others in the conspiracy." We agree. At sentencing, although the evidence established that the conspiracy had more than five participants, there was no compelling evidence that Baker directed or exercised control over any of the participants. Initially, the presentence report stated that Baker "directed the activities of multiple co-conspirators," specifically, Sabrina and Ken Allen (her brother and sister), Timothy Warren, and her mother. When Baker objected to the leader adjustment, the probation officer responded that "Baker directed the activities of, at least, Timothy Warren, and her mother, Barbara Allen[.]"

The district court decided that the conspiracy had more than five participants; that Baker took "the larger share" of the fruits of the crime; and that Warren "was getting paid by her to be the doorman . . . to take care of the dogs, and to just kind of be a handyman around her residence." The court found that Baker was "the one who participated in planning or

organizing the offense. She was running the show." The court further found that:

> [S]he did exercise control and authority over the others. She would go and do the deals to get the drugs from her suppliers and then had the operation set up in her residence, set the price, direct those who were handling the door for her, to the extent it wasn't her directly, in the exchange of money for the crack.

With regard to Sabrina and Ken Allen, the evidence showed only that they sold crack in the same vicinity as Baker, and sometimes sold crack at her house, but not that they acted at her direction or under her control. Rather, the evidence appears to show that they all acted cooperatively. Barber testified that Sabrina obtained her crack from either Michael Williams or Baker, and sold crack at her own house and at Baker's house. Michael Burrell testified that he saw Sabrina and Ken Allen at Baker's house because she "let . . . certain people come over to make money," but that he did not like to buy from them because they gave smaller amounts of crack for the same amount of money.

As evidence that Baker directed the activity of Timothy Warren, the probation officer reported that "Warren testified before the grand jury regarding his knowledge of the drug-trafficking activities of Wayne Vick, Beverly Baker, and Ronnell Perry." Warren also testified before the grand jury

10

that he bought crack from Baker by knocking at her door and that either Baker or Sabrina would answer the door.

In addition, the probation officer noted that Michael Burrell testified at trial that, during one his controlled purchases of crack from Baker, he encountered Warren at her door, gave his money to Warren, who passed it to Baker, who went to the rear of her trailer, and shortly afterward Baker's niece brought the crack to Burrell. The probation officer further noted that Shawn Barber testified at trial that "Warren was a 'door man' at Baker's residence." However, Joe Davis, one of Baker's regular customers, testified that, when he went to her house, "different people" would answer the door, including Baker, her brother or sister, and sometimes a child. He did not mention Warren. Ronnell Perry, who lived with Baker, testified at trial that Warren was a crack customer of Baker's who did "odds and ends" of work around her house and was paid in cash or crack. There was no testimony or other evidence that established that Warren was actually employed by Baker or directed by her in any capacity relating to the offense. Instead, the evidence showed that Warren was a crack user who helped out around Baker's house at times in order to obtain crack or money for crack, and sometimes opened the door if he was present when another customer arrived, but took no active part in the conspiracy.

11

After Baker was arrested, she called her mother, Barbara Allen, from prison and asked her mother to collect $600 owed to her by Joe Davis. Davis testified that he paid Baker whatever he owed her for crack when he received his disability payment each month. After Baker's arrest, he said he first tried unsuccessfully to get in touch with Baker's "people," but that ultimately Baker's mother and brother came to his bank, where he gave them the money he owed Baker. There was no evidence that Baker's mother had any other part in the conspiracy. We conclude that this one recorded instance in which she did something Baker asked her to do is insufficient to qualify Baker for the four-level leader/organizer adjustment.

The trial evidence established that Baker involved her niece, a minor, in her drug sales to a limited extent. However, the two-level enhancement under § 2D1.1(b)(14)(B)(1) applies only if the defendant also has an aggravating role in the offense. Because the evidence did not establish that Baker had such an aggravating role, the enhancement for use of minors was incorrectly applied.

Last, Baker challenges the adjustment for obstruction of justice. To impose a Guidelines adjustment for obstruction of justice based on perjury, "the sentencing court must find that the defendant (1) gave false testimony; (2) concerning a material matter; (3) with willful intent to deceive." United

12

States v. Perez, 661 F.3d 189, 192 (4th Cir. 2011). This Court held in Perez that, "[i]f a district court does not make a specific finding as to each element of perjury, it must provide a finding that clearly establishes each of the three elements." Perez, 661 F.3d at 193.

The district court found that Baker testified falsely in 2009 before a grand jury that was investigating Michael Williams' drug trafficking. The court reviewed her statements and found that each of them amounted to perjury and constituted obstruction of justice. The grand jury proceedings are not in the record on appeal, but Baker does not dispute that she testified falsely that she had never seen Williams in possession of cocaine or any illegal narcotics; said that Wayne Vick was not in the drug business; said she had never received crack or powder from Wayne Vick; and said she had never sold cocaine. Baker contends that the district court's findings were inadequate because (1) the district court did not find that her false statements were material to the investigation of her own drug offense, and (2) failed to find that she had an intent to deceive. However, Baker does not dispute that, when she appeared before the grand jury, she was advised that the grand jury was investigating narcotics violations, that she had been named as being involved in the distribution of illegal substances, that she could later be charged with a federal drug

13

violation, that she was advised of her rights, including her right not to incriminate herself, and that she was informed that she was under oath and subject to the penalty of perjury. In light of this uncontested information, although the district court failed to make specific findings on each element of perjury, we conclude that the court's findings were adequate, and that application of the adjustment was not clearly erroneous.

We note that the district court stated that it would impose the same life sentence as a variance if it had miscalculated the Guidelines range, citing Savillon-Matute, 636 F.3d at 123 (holding that claimed procedural error in Guidelines calculation is harmless if (1) the district court would have imposed the same sentence even if it had decided the Guidelines issue the other way, and (2) the sentence imposed is reasonable). In this case, we cannot say that the life sentence imposed by the district court is reasonable because, on the record before us, Baker's conduct was comparable to that of her co-conspirators rather than more culpable. Although we express no opinion as to the appropriate sentence, the district court may wish to reconsider its previous conclusion that the sentencing goals of 18 U.S.C. § 3553(a) (2006) require a life sentence rather than a thirty-year sentence.

14

For the reasons discussed, we vacate the sentence and remand for resentencing in accord with this opinion. We deny Baker's motion for leave to file a pro se brief. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

VACATED AND REMANDED