**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 22-4237**

───────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

RODNEY MONDELL COBY, a/k/a Cuz,

        Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. George Jarrod Hazel, District Judge. (8:18-cr-00292-GJH-1)

───────────

Argued:  March 10, 2023                    Decided:  April 24, 2023

───────────

Before NIEMEYER and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────

Affirmed in part, vacated in part, and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Niemeyer and Judge Floyd joined.

───────────

**ARGUED:** Megan Elizabeth Coleman, MARCUSBONSIB, LLC, Greenbelt, Maryland, for Appellant. Elizabeth G. Wright, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

───────────

TOBY HEYTENS, Circuit Judge:

A jury found Rodney Mondell Coby guilty of six drug-related offenses, and the district court sentenced him to 40 years in prison. Coby raises two challenges to the verdict, both of which we reject. Coby also raises two challenges to his sentence. We disagree with the first, which argues the district court clearly erred in finding Coby was "an organizer, leader, manager, or supervisor in . . . criminal activity." U.S.S.G. § 3B1.1(c). But we agree the district court committed reversible error in enhancing Coby's advisory Guidelines range based on a provision added after he committed the crimes. We thus vacate Coby's sentence and remand for further proceedings.

I.

On September 6, 2017, a woman named Angela Bailey was found dead in her car. Detectives also found a metal spoon with drug residue and burn marks, a plastic bag with "a powdery residue," and multiple syringes. JA 447. Testing revealed the presence of fentanyl, furanyl fentanyl, heroin, oxycodone, and diazepam. A medical examiner determined Bailey's cause of death was "Fentanyl and Despropionyl Fentanyl Intoxication," but the precise manner of death could not be determined. JA 1155. Bailey's urine was positive for fentanyl and her blood was positive for fentanyl and despropionyl fentanyl.

In January 2020, Coby was charged with six drug and firearms offenses. Most important here are Counts 1, 5, and 6. Count 1 charged Coby with conspiring to distribute fentanyl and heroin. Count 5 charged him with knowingly "distribut[ing] a mixture and substance containing a detectable amount of . . . fentanyl" and further alleged Bailey's

2

"death resulted from the use of such substance." JA 30. Count 6 charged Coby with knowingly "distribut[ing] a quantity of a mixture and substance containing a detectable amount of . . . fentanyl," which resulted in the death of a person named Anthony Davis. JA 31. Coby pleaded not guilty, and the case went to trial.

When the government rested its case, Coby moved for a judgment of acquittal, arguing the government failed to prove he distributed fentanyl and that fentanyl was the drug that caused Bailey's and Davis's deaths. The district court denied the motion and later denied Coby's renewed motion as well.

After instructing the jury about the elements of the conspiracy charged in Count 1, the court addressed the relationship between Count 1 and the other counts (including Count 5). The court said:

> If, in light of my instructions, you find beyond a reasonable doubt that the defendant was a member of the conspiracy charged in Count One, and thus, guilty on the conspiracy count, then you may also, but you are not required to, find him guilty of [the other counts] provided that you find, beyond a reasonable doubt, each of the following elements:
>
> First, that the crime charged in the substantive count was committed;
>
> Second, that the person or persons you find actually committed the crime were members of the conspiracy you found to have existed;
>
> Third, that the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;
>
> Fourth, that the defendant was a member of that conspiracy at the time the substantive crime was committed;
>
> Fifth, that the defendant could have reasonably foreseen that the substantive crime might be committed by his coconspirators.
>
> If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of these crimes even though he did not

personally participate in the acts constituting the crime or did not have actual knowledge of it.

The reason for this rule is simply that a coconspirator who commits a crime pursuant to a conspiracy is deemed to be the agent of the other conspirators. Therefore, all of the coconspirators must bear criminal responsibility for the commission of the crimes committed by its members.

JA 1002–03. Upon concluding its instructions, the court took a ten-minute recess to permit counsel to prepare for closing arguments.

When they reconvened on the record, the district court told the parties it had "caught" "a substantive issue" while delivering the instructions. JA 1022. The issue the court flagged involved the reference in the "coconspirator liability" instruction to "another method by which you may evaluate the guilt of the defendant with the charge of conspiracy to distribute with intent to distribute as charged in Count One even if you don't find the government has satisfied its burden of proof." JA 1022. The court said:

I think what we are intending to say there, if you look at the remaining of the instruction, is that if they do find him guilty on Count One, that it may—I mean, it's sort of a *Pinkerton* [*v. United States*, 328 U.S. 640 (1946),] doctrine instruction—that that may be used to convict him of the other counts, Counts Two through Six.

To say it another way, if they do not find him guilty of Counts Two through Six as having actually done it himself, if they did convict him of Count One, they could use this five-factor test to still find him guilty of that.

I don't know if my explanation of that was any clearer than the instruction is, but I think it's incorrect as written.

JA 1022–23. The court continued:

I think it should say, There is another method by which you may evaluate the possible guilt of the defendant for Counts Two through Six if you do not find that the government has satisfied its burden of proof with respect to each element of those crimes.

4

JA 1023. After a back and forth with counsel about whether "*Pinkerton* applies to the death counts" and whether any argument it does not apply had been preserved, the district court decided no further instructions would be given. JA 1023–24.

The jury found Coby guilty on all six counts. On Count 5, the jury also found—via a special interrogatory—that "[t]he government prove[d] beyond a reasonable doubt that the use of the fentanyl distributed by the defendant, Rodney Mondell Coby, resulted in the death of Angela Bailey." JA 1141. In contrast, on Count 6, the jury answered "no" when asked whether "the government prove[d] beyond a reasonable doubt that the use of the fentanyl distributed by the defendant, Rodney Mondell Coby, resulted in the death of Anthony Davis." JA 1142.

Although calculating Coby's advisory Guidelines range was an intricate matter, only two aspects are relevant here. First, the district court increased Coby's offense level by two because it found he was "an organizer, leader, manager, or supervisor" within the meaning of Guidelines § 3B1.1(c). Second, the court increased Coby's offense level by four because it concluded Coby misrepresented fentanyl as heroin. In so doing, the district court applied a provision added to the Federal Sentencing Guidelines after Coby committed the crimes for which he was convicted. The court ultimately sentenced Coby to 480 months of imprisonment, including 420 months on the count involving Bailey's death.

## II.

The evidence was sufficient to support the jury's verdict on Count 5. Our limited task is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

5

beyond a reasonable doubt." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quotation marks omitted). The answer is yes.

Contrary to Coby's argument, he was not charged with distributing "fentanyl" and the jury was not required to find fentanyl was the cause of Bailey's death. Rather, the indictment charged Coby with "distribut[ing] *a mixture and substance containing . . . fentanyl . . . and*" asserted Bailey's death "resulted from the use of *such* substance." JA 30 (emphasis added). The district court's instruction on this point—to which Coby did not object—told the jury its task was to determine whether Coby "distributed *a mixture and substance containing a detectable amount of* fentanyl" and whether "the drug *containing* fentanyl distributed by the defendant resulted in the death[] of Angela Bailey." JA 1013–14 (emphasis added). For that reason, the government was not required to prove that Bailey died from a fentanyl overdose—it was required to show Bailey died from using a "substance" containing fentanyl for whose distribution Coby was legally responsible.

The government introduced sufficient evidence for the jury to conclude it had met that burden. The jury heard evidence Coby supplied the drugs Bailey consumed on the day of her death and that she died around three hours later from a drug overdose. "[A]llow[ing] the government the benefit of all reasonable inferences," a jury could conclude a substance distributed by Coby was the cause of Bailey's death. *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (quotation marks omitted).

### III.

We next hold any error in instructing the jury on Count 5 was harmless. The underlying statute makes it a crime to "distribute . . . a controlled substance" and imposes

6

an enhanced penalty "if death or serious bodily injury results from the use of such substance." 21 U.S.C. § 841(a)(1), (b)(1)(C). Relying on a Sixth Circuit decision, Coby asserts this enhancement applies "*only* . . . to defendants who were part of the distribution chain that placed the drugs into the hands of the overdose victim" and faults the jury instructions for permitting liability in situations where the fatal drugs were distributed by the defendant's co-conspirators. Coby Br. 31 (citing *United States v. Hamm*, 952 F.3d 728, 744 (6th Cir. 2020) (emphasis added)). The government counters that Coby forfeited this challenge by failing to make a timely objection and asserts the district court's instructions were correct in any event.

We need not resolve which side is right about preservation or the merits because Coby's challenge fails either way. When asked whether "the government prove[d] beyond a reasonable doubt that the use of the fentanyl *distributed by* the defendant, Rodney Mondell Coby, resulted in the death of . . . Bailey," the jury responded: "Yes." JA 1141 (emphasis added). Because this exchange demonstrates the jury's verdict did not rest on a theory of co-conspirator liability, we conclude any instructional error was harmless. See Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded."); *United States v. Moye*, 454 F.3d 390, 399 (4th Cir. 2006) ("In general, an error in a jury instruction will warrant reversal of the conviction only if the error is prejudicial based on a review of the record as a whole." (quotation marks omitted)).

7

IV.

Coby raises two challenges to his sentence. We reject the first, sustain the second, and remand for sentencing.

A.

The district court did not clearly err in finding Coby was "an organizer, leader, manager, or supervisor in . . . criminal activity." U.S.S.G. § 3B1.1(c); see *United States v. Kellam*, 568 F.3d 125, 147–48 (4th Cir. 2009) ("The court's ruling regarding a role adjustment is a factual determination reviewed for clear error.").

Coby asserts the district court erred by relying solely on the fact that he "fronted" drugs to others "with the expectation that [they] would sell the drugs and bring the money back that they owed Coby." Coby Br. 47. In so arguing, Coby seeks to distinguish his case from *Kellam*, in which this Court upheld a three-level enhancement for "manag[ing] or supervis[ing]" criminal activity that "involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b); see *Kellam*, 568 F.3d at 147–48. Coby insists the defendant in *Kellam* "was given a role enhancement not for merely fronting drugs to others" but also because he "directed others to sell the drugs for him, to receive payments on his behalf, and to bring back specific amounts of money." Coby Br. 48–49 (emphasis omitted).

Under the facts here, Coby's distinction makes no difference. As in *Kellam*, Coby "exercised . . . management responsibilities" by "controlling the drug buys of other conspirators" through actions like engaging in "fronting transactions" where co-conspirators received drugs on credit and paid Coby later. *Kellam*, 568 F.3d at 148. Nor

8

does this case involve isolated instances of fronting or minor quantities of drugs. To the contrary, the government represented—without objection—that Coby "extend[ed] over $300,000 worth of credit" to other dealers "over a period of seven months." JA 1233. The value of the drugs Coby fronted leaves little doubt he expected the drugs to be sold and to be repaid. In addition, the government also noted—without contradiction—that Coby's apartment contained "not one scale but four scales, and there were drugs in different packaging and different sizes," all of which "was more than one person would have needed." *Id.* Each of these facts is relevant in assessing "the nature of [Coby's] participation in the commission of the offense," his "degree of participation in planning or organizing the offense," and "the degree of control and authority [Coby] exercised over others." U.S.S.G. § 3B1.1, cmt. 4.

We do not hold that fronting drugs—standing alone—is invariably sufficient to trigger an enhancement under Guidelines § 3B1.1(c). But, "after reviewing all the evidence" in this case, "we are [not] left with the definite and firm conviction that a mistake has been committed." *United States v. Steffen*, 741 F.3d 411, 415 (4th Cir. 2013) (quotation marks omitted).

## B.

In contrast, we conclude the district court erred in applying a provision that was not part of the Sentencing Guidelines when Coby committed his offenses and that Coby is entitled to relief even under the plain-error standard.

The district court increased Coby's offense level by four because he misrepresented fentanyl as heroin. In doing so, the district court applied a Guidelines provision that did not

9

take effect until November 1, 2018—after the conduct charged in the indictment had occurred. See U.S.S.G. App. C. Supp. at 175 (2018).

As the government now concedes, that was error. True, the Federal Sentencing Guidelines generally direct the courts to "use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). But there is an exception for situations when doing so "would violate the *ex post facto* clause of the United States Constitution." § 1B1.11(b)(1). And because the Supreme Court has held "[a] retrospective increase in the Guidelines range applicable to a defendant . . . constitute[s] an *ex post facto* violation," *Peugh v. United States*, 569 U.S. 530, 544 (2013), the district court erred by not "us[ing] the Guidelines Manual in effect on the date that the offense of conviction was committed," U.S.S.G. § 1B1.11(b)(1).

Before the district court, however, Coby never argued the court was using the wrong Guidelines Manual. For that reason, Coby's claim is forfeited, and he cannot prevail without satisfying the plain-error standard. See Fed. R. Crim. P. 52(b). To do so, Coby must show: "(a) the error was plain; (b) the error affected substantial rights, meaning that there is a reasonable probability that, but for the error, the outcome of the proceeding would have been different; and (c) the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *United States v. Heyward*, 42 F.4th 460, 465 (4th Cir. 2022) (quotation marks omitted).

We conclude this error was "plain" in the sense of being "clear" or "obvious" under current law. *United States v. Carthorne*, 726 F.3d 503, 516 (4th Cir. 2013) (quotation marks omitted). That requirement is satisfied where "the settled law of the Supreme Court

10

or this circuit establishes that an error has occurred." *Id.* (quotation marks omitted). As just explained, that is exactly what the Supreme Court's decision in *Peugh* does here.

We likewise conclude the error affected Coby's substantial rights. Here too, we are guided by a Supreme Court decision almost directly on point. In *Molina-Martinez v. United States*, 578 U.S. 189 (2016), the Court rejected the notion that a defendant (like Coby) whose ultimate sentence fell within the *correct* advisory Guidelines range "must identify 'additional evidence' to show that use of [an] *incorrect* Guidelines range did in fact affect his sentence." *Id.* at 191 (emphasis added). Instead, the Court explained that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Id.* at 198; see *id.* at 200 (similar).[1]

To be sure, *Molina-Martinez* was careful to state this holding in terms of "most cases" and to acknowledge "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." 578 U.S. at 200. But this case does not present any of the "unusual circumstances" identified in *Molina-Martinez*. *Id.* at 201. We have no statement by the district court that it "thought the

---

[1] The government cites a pre-*Molina-Martinez* decision of this Court for the proposition that Coby "must show that he would have received a lower sentence had the error not occurred." U.S. Br. 49 (quoting *United States v. Knight*, 606 F.3d 171, 178 (4th Cir. 2010)). That remains true. As *Molina-Martinez* makes clear, however, "in the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder." 578 U.S. at 201.

sentence it chose was appropriate irrespective of the Guidelines range." *Id.* at 200. Nor is this a case in which the court's "explanation . . . make[s] it clear that the judge based the sentence he or she selected on factors independent of the Guidelines." *Id.* To the contrary, "the record is silent as to what the district court might have done had it considered the correct Guidelines range." *Id.* at 201.

The government responds by emphasizing Coby's ultimate sentence was below the incorrect Guidelines range (life imprisonment) and within "the heartland of the correct Guidelines range" (30 years to life). U.S. Br. 48; see Oral Arg. 23:12–24:10, 26:45–35:20. But *Molina-Martinez* says the same principles apply "whether or not the defendant's ultimate sentence falls within the correct range," 578 U.S. at 198, and the government identifies no authority suggesting it matters whether the ultimate sentence was below the bottom of the incorrect one. "To the contrary: The whole point of *Molina-Martinez* is that the Guidelines range is presumed to have" an "anchoring effect" on sentencing decisions. *United States v. Green*, 996 F.3d 176, 186 (4th Cir. 2021); accord *Peugh*, 569 U.S. at 541 (stating district courts not only must "begin their analysis with the Guidelines" but must "remain cognizant of them throughout the sentencing process" (quotation marks omitted)). Coby has thus shown a reasonable probability his sentence would have been different without the error.

We also conclude this is an appropriate case to exercise our discretion to correct the forfeited error. Here too, we benefit from an on-point Supreme Court decision. In *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018), the Court held that, "[i]n the ordinary case, . . . the failure to correct a plain Guidelines error that affects a defendant's substantial

rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Id.* at 1911. And because the record reveals no "countervailing factors" establishing "the fairness, integrity, and public reputation of the proceedings will be preserved absent correction," *id.* at 1909, we choose to correct this particular error. Accord *United States v. Nelson*, 37 F.4th 962, 970–71 (4th Cir. 2022); *Green*, 996 F.3d at 187.[2] We thus vacate Coby's sentence and remand for resentencing.

*      *      *

We reject Coby's sufficiency of the evidence challenge and his claim that the district court committed reversible error in instructing the jury. We vacate Coby's sentence and remand for resentencing consistent with this opinion.

*SO ORDERED*

---

[2] As in *Nelson* and *Green*, the government has neither identified any countervailing factors "nor made any other argument regarding the [final] factor." *Nelson*, 37 F.4th at 970–71 (quoting *Green*, 996 F.3d at 187).