**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-4282**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LAWRENCE LEVON JONES,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:20-cr-00388-D-1)

Argued:  December 12, 2025                          Decided:  February 4, 2026

Before WYNN, HEYTENS, and BERNER, Circuit Judges.

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge Heytens and Judge Berner joined.

**ARGUED:**  Rudolph Alexander Ashton, III, DUNN PITTMAN SKINNER & CUSHMAN, PLLC, New Bern, North Carolina, for Appellant.  Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Daniel P. Bubar, Acting United States Attorney, Antoinette T. Bacon, Supervisory Official, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

WYNN, Circuit Judge:

Lawrence Levon Jones challenges his convictions of drug- and firearms-related offenses, and sentence to 480 months' imprisonment on three grounds: an evidentiary ruling limiting the impeachment of a cooperating witness, the denial of his motion for judgment of acquittal on his firearms convictions, and the application of obstruction and leadership sentencing enhancements.

Because we find that none demonstrates legal error or prejudice warranting reversal, we affirm the judgment of the district court.

I.

A.

The Raleigh Police Department investigated Jones as a drug supplier during a larger drug-trafficking investigation. In 2020, officers identified a Raleigh home as a potential stash house. They monitored Jones's visits to the house, installed a pole camera outside, and wiretapped Jones's phone. Jones traveled between North Carolina, New Jersey, and California, but he visited the stash house nearly every day he was in North Carolina during the surveillance period.

In early 2020, Wesley Kelly met Jones through a mutual connection. Kelly had been purchasing large quantities of marijuana in California and selling it in Georgia. After their meeting, Jones began giving Kelly money to purchase marijuana in California and drive it to North Carolina. Jones also wanted to source cocaine from California, and he would fly there, collect some of the money he had stored with Kelly, and find California suppliers. During this time, officers listened to calls between Jones and Omar Thompson in which

2

they discussed cocaine inspections and purchases. In one call, Jones told Thompson how to inspect the cocaine, telling him to cut a package open all the way, like Thompson had seen Jones "do it a hundred times." J.A. 558.[1]

Eventually, the investigation led to coordinated arrests and seizures. On July 11, 2020, Kelly met with Jones at the North Carolina stash house, where Jones gave him about $475,000. Kelly was also carrying additional money (about $750,000) from another client, and he took the pool of money to California to be used for drug purchases. Jones then flew to California, collected some of his money from Kelly, and returned to Kelly's apartment with three kilograms of cocaine. The next morning, another of Kelly's clients called to report that marijuana was ready to be loaded into a "trap" in Kelly's truck, which had been constructed to disguise the drugs. J.A. 335. Kelly loaded a large quantity of marijuana into the truck and put the three kilograms of cocaine from Jones on top.

North Carolina officers worked with an investigator in Texas to stop Kelly's truck on the drive back from California. On July 22, the investigator pulled Kelly over, made arrests, and seized the drugs.

Meanwhile, Jones had flown back to North Carolina, arriving at the stash house on the evening of July 20. He came and went several times over the next two days and received several visitors. On the evening of July 22, police arrested Jones when he again arrived at the house. Investigators then searched the house. They seized cocaine from the living room, kitchen, and front bedroom. They found several kilo presses, which are used to repackage

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

cocaine after it is cut with a non-cocaine substance; other drug-related materials; and various papers belonging to Jones, including bank statements, parking tickets, and bills. In the front bedroom, investigators found a bag of cocaine on top of the bed, two guns (a 9-millimeter Beretta and a .40 caliber Smith & Wesson) between the mattress and box spring, a Beretta gun box on the floor by a package of marijuana, and over $95,000 in cash under the bed.

On July 23, the morning after his arrest, Jones made several recorded jail calls. He first called his girlfriend, Katrina Langford, and told her to bring $200,000 to Kimberly McAllister, a second girlfriend. He then called McAllister, who said she was waiting for Langford and would then come down to court. Jones told McAllister to secure the money before coming to court. On July 24, officers searched McAllister's home. After they found $35,260 and a box of 9-millimeter and .40-caliber ammunition, McAllister took the officers to another house with $140,130 in a vacuum-sealed bag in a closet. Finally, officers recovered $48,000 during a traffic stop involving Langford's vehicle.

### B.

An August 19, 2020, indictment charged Jones and eight others with various drug and firearms offenses. On September 7, 2023, Jones was charged individually in a superseding indictment with four counts. Count 1 was a violation of 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine, a quantity of cocaine base (crack), a quantity of methamphetamine, and a quantity of marijuana. Count 2 was a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, possession with the intent to distribute (or aiding and abetting that possession) five

4

kilograms or more of cocaine, a quantity of cocaine base (crack), a quantity of methamphetamine, and a quantity of marijuana. Count 3 was a violation of 18 U.S.C. § 924(c)(1)(A), possession of a firearm in furtherance of a drug trafficking crime. Count 4 was a violation of 18 U.S.C. §§ 922(g)(1) and 924, possession of a firearm by a felon.

Jones was convicted on all counts after a three-day jury trial. The government put on as witnesses their investigators, forensic analysts, other experts, and Wesley Kelly, who was testifying pursuant to a plea agreement. Just before Kelly testified, the government notified the court that Kelly had two prior federal drug convictions from the 1990s. Over Jones's objection, the court excluded the convictions under Federal Rule of Evidence 609(b). Kelly then proceeded to testify that he had signed a plea agreement that required him to cooperate because he was hoping to receive a lower sentence, and that his sentencing range had changed from 10 to life to 5 to 40 years through the plea agreement.

At the close of the government's evidence, Jones moved for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. He argued that there was no evidence to tie Jones to the guns or that Jones knew the guns were in the stash house, and thus the court should dismiss the §§ 924(c) and 924(g)(1) charges. The court denied the motion. After deliberating for about three hours, the jury found Jones guilty on all counts.

At his sentencing hearing, Jones objected to a two-level obstruction enhancement, which was based on his post-arrest jail calls, by arguing that Jones was attempting to gather bail money. He also objected to a four-level leadership enhancement, arguing that statements from a confidential informant, Lorenzo Turner, were not credible and that there was no evidence that Jones controlled other participants in the drug trade. The district court

5

overruled Jones's objections and stated that it found Turner credible. The parties then agreed that an offense level of 40 and a criminal history category of VI yielded a Guidelines range of 360 months to life imprisonment. The district court sentenced Jones to 480 total months' imprisonment: 420 months for Counts 1 and 2, served concurrently; 120 months for Count 4, served concurrently; and 60 months for Count 3, served consecutively.

Jones timely appealed.

## II.

First, Jones argues that the district court should have permitted him to cross-examine Wesley Kelly on his drug convictions from the 1990s. We disagree.

"We review a district court's evidentiary rulings for an abuse of discretion, and we will only overturn a ruling that is arbitrary and irrational." *United States v. Nsahlai*, 121 F.4th 1052, 1060 (4th Cir. 2024) (citation omitted). "An abuse of discretion occurs when an evidentiary decision 'is guided by erroneous legal principles or rests upon a clearly erroneous factual finding.'" *Id.* (citation omitted). "And even in the event of an error, we will not reverse if the error was harmless." *Id.* (citing Fed. R. Crim. P. 52(a)).

Rule 609(b) presumptively bars admission of a witness's prior conviction that is more than 10 years old. *United States v. Beahm*, 664 F.2d 414, 417–18 (4th Cir. 1981). Courts "very rarely and only in exceptional circumstances" depart from this general rule. *Id.* at 417 (citation omitted). To do so, a district court must comply with a "stringent standard," and make findings supported by "specific facts and circumstances." *Id.* at 418 (citation omitted).

6

To be admitted, evidence otherwise barred by Rule 609(b) must meet two conditions: "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). The parties dispute only the first prong.

Jones argues that the prior federal drug convictions had probative value and that there was no potential for prejudice. Kelly was the only cooperator who testified, and Jones argues that Kelly's previous experience with federal sentencing motivated him to do so. Jones also argues that Kelly's role as a government witness, rather than a criminal defendant, means that there was no potential prejudice to Kelly or the government.

First, it is unclear what probative value the prior convictions could add to the already admitted evidence about Kelly's motivation to testify. Jones admits that the jury heard that Kelly was "testifying pursuant to a plea agreement in order to get a reduced sentence" and that his "exposure was reduced from a 10 year to life sentence to a sentence of 5 to 40 years." Opening Br. at 12. Kelly also testified to selling drugs before meeting Jones.

Second, the fact that Kelly was a government witness does not affect our analysis here. Rule 609(b), unlike subsection (a), does not distinguish between defendant witnesses and non-defendant witnesses in criminal cases. *Compare* Fed. R. Evid. 609(a) (applying different standards "in a criminal case in which the witness is a defendant"), *with* Fed. R. Evid. 609(b) ("This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement[.]"). Indeed, several of our peer circuits have affirmed the exclusion of a government witness's stale conviction under Rule 609(b).

7

*See, e.g.*, *United States v. Stoltz*, 683 F.3d 934, 938–40 (8th Cir. 2012); *United States v. Cook*, 608 F.2d 1175, 1182 (9th Cir. 1979) ("[T]he 10-year time limitation of Rule 609(b) applies to government as well as to defense witnesses."); *United States v. Solomon*, 686 F.2d 863, 873 (11th Cir. 1982).

Here, the district court excluded Kelly's convictions after finding that their probative value was not supported by specific facts and circumstances that substantially outweighed their prejudicial effect. Under Rule 609(b), that was clearly proper.

## III.

Next, Jones appeals the denial of his motion for acquittal, arguing that there was insufficient evidence to support his two firearms-related convictions. "We review the denial of a motion for acquittal de novo." *United States v. Wiley*, 93 F.4th 619, 632 (4th Cir. 2024). We "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it." *United States v. Caldwell*, 7 F.4th 191, 209 (4th Cir. 2021) (citation omitted).

Jones was convicted under 18 U.S.C. § 924(c) for the possession of a firearm in furtherance of a drug trafficking crime (Count 3) and under 18 U.S.C. § 922(g)(1) for the possession of a firearm by a felon (Count 4). For each conviction, Jones argues that there was insufficient evidence that he possessed a firearm.[2] Applying our case law on constructive possession, we disagree.

---

[2] Each count requires the government to establish possession of a firearm. To convict under § 924(c), the government had to establish that Jones "(1) committed a drug trafficking offense and (2) possessed a firearm (3) in furtherance of that drug offense." (Continued)

Possession can be "actual or exclusive," but it can also be "constructive or joint." *United States v. Lawing*, 703 F.3d 229, 240 (4th Cir. 2012) (citation omitted). A person has constructive possession if they "exercised, or had the power to exercise, dominion and control over the item." *United States v. Moye*, 454 F.3d 390, 395 (4th Cir. 2006) (en banc) (citation omitted). Thus, constructive possession can be established by showing that the defendant had "ownership, dominion, or control over the contraband" or over "the premises in which the contraband was concealed, along with knowledge of the presence of the contraband." *United States v. Sutton*, 126 F.4th 869, 875 (4th Cir. 2025) (cleaned up).

Proximity to the contraband alone is insufficient to establish constructive possession, but a jury may consider proximity, when combined with additional evidence, to infer constructive possession. *See United States v. Cabrera-Rivas*, 142 F.4th 199, 216 (4th Cir. 2025) (citing *United States v. Blue*, 957 F.2d 106, 108 (4th Cir. 1992)); *United States v. Davis*, 75 F.4th 428, 437 (4th Cir. 2023).

Whether constructive possession exists is a "fact-specific inquiry," *Lawing*, 703 F.3d at 240 (citation omitted), and we have "shied away from bright-line rules when we've considered what's enough to prove possession," *Cabrera-Rivas*, 142 F.4th at 216. On one end of the spectrum, we have held that a car passenger's shoulder "dip" as officers

---

*United States v. Dennis*, 19 F.4th 656, 667 (4th Cir. 2021). To convict under § 922(g)(1), the government had to establish "(1) the defendant was previously convicted of a felony, (2) the defendant knew he was a felon, (3) the defendant knowingly possessed the firearm, and (4) the possession was in or affecting commerce." *United States v. Robertson*, 68 F.4th 855, 862 (4th Cir. 2023).

9

approached the vehicle was not enough additional evidence (beyond mere proximity) to establish constructive possession of a firearm found under his seat. *Blue*, 957 F.2d at 108.

But Jones's situation more closely resembles our cases on the other side. Three examples are helpful: In *United States v. Nelson*, the defendants were in a home during a gun-and-drug seizure, and the guns were in easily accessible places, including on the entertainment center in the dining room. 6 F.3d 1049, 1054 (4th Cir. 1993), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137 (1995). In *United States v. Robertson*, the defendant kept other belongings in the room where the gun was found, and he had a matching bullet in his pocket. 68 F.4th 855, 862 (4th Cir. 2023). Finally, in (a different) *United States v. Jones*, the defendant was seen leaving the bedroom where drugs were found and kept personal papers there. 204 F.3d 541, 543–44 (4th Cir. 2000). In each case, we held that the evidence was sufficient for a jury to find constructive possession.

The same is true here. The evidence showed that Jones had joint control over the stash house: Bragg's name was on the lease and on the utilities, Jones paid the ADT security bill, and they both had keys to the residence. Jones kept documents with his name on them at the house, and surveillance showed that he visited often. In the front bedroom, officers seized cocaine from a chest on top of the bed, two guns from between the mattress and box spring, and a bag of cash from under the bed. The box for the 9-millimeter pistol was on the floor to the side of the bed. Thus, Jones's drugs were in the room with the guns, with a gun box in plain sight.[3]

---

[3] Jones does not challenge the finding that he possessed the drugs.

10

Additionally, officers seized 9-millimeter and .40-caliber ammunition from Jones's girlfriend's residence—the same caliber as the stash-house pistols. Though Jones argues that his girlfriend lawfully possessed a 9-millimeter gun, he has no explanation for the .40-caliber ammunition, and the jury could reasonably infer that both types supported Jones's possession of the stash-house guns.

Ultimately, Jones emphasizes "types of evidence missing from the government's case." *United States v. Moody*, 2 F.4th 180, 190 (4th Cir. 2021). Jones argues that no one had ever seen him with a gun, and his nonexclusive control of the premises meant that someone else could have kept a gun there without his knowledge. But the other circumstantial evidence, as described above, allowed the jury to infer that Jones knew that the guns were in the room in which he kept his drugs. Though he may argue that "there are potentially innocent explanations" for each piece of evidence, and that there is no direct evidence tying him to the guns, "the district court did not err in sending this charge to the jury." *Id.* at 191.

## IV.

Finally, Jones challenges his sentencing enhancements based on obstruction and leadership. We review the district court's sentencing decisions under an abuse-of-discretion standard. *United States v. McCabe*, 103 F.4th 259, 285 (4th Cir. 2024). In assessing the district court's application of the Sentencing Guidelines, "we review the court's factual findings for clear error and its legal conclusions de novo." *Id.* (citation omitted). Thus, the district court's findings that Jones obstructed justice and was a leader in the criminal activity are reviewed for clear error. *See United States v. Hughes*, 401 F.3d

11

540, 560 (4th Cir. 2005) (obstruction); *United States v. Coby*, 65 F.4th 707, 711 (4th Cir. 2023) (leadership).

A.

First, Jones challenges his two-level sentencing enhancement for obstruction. He argues that the evidence supports his assertion that his jail calls were an attempt to secure bail money rather than to conceal drug proceeds. In the alternative, Jones argues that even if he attempted to conceal drug money, it didn't work, and in fact his recorded calls aided the investigation by alerting agents to the money.

1.

The district court did not clearly err by finding that Jones had attempted to conceal drug proceeds by directing his girlfriends from jail.

The morning after Jones's arrest, he made several recorded jail calls. He first called Langford and told her to bring $200,000 to McAllister. Then, he called McAllister, who said she was waiting for Langford and would then come to court. Jones told McAllister to secure the money before coming to court. Officers then obtained a warrant and searched McAllister's home the next day. They found $35,260, and McAllister then brought the officers to another house, where they found $140,130 in a vacuum-sealed bag in a closet. Finally, officers recovered $48,000 during a traffic stop of Langford's car.

Jones argues that the jail calls "could logically have supported" his contention that he was attempting to obtain bond money. Opening Br. at 25–26. Perhaps, but that conclusion would not create clear error. When "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States*

12

*v. Chaudhri*, 134 F.4th 166, 181 (4th Cir. 2025) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

Here, the district court did not clearly err when it found that "the chronology of the phone calls and then the amount of money and it being in different locations" indicated an attempt "to essentially hide it." J.A. 678.

2.

In the alternative, Jones argues that the obstruction enhancement should not apply because the jail calls failed to hinder the investigation. In essence, Jones asks us to hold that his conduct fits into the "material hindrance" limitation. We are unpersuaded.

Here, the district court applied the obstruction enhancement under § 2D1.1(b)(16)(D), though it found that Jones's conduct also "would be obstruction under 3C1.1." J.A. 678. Both sections direct a two-level enhancement for obstruction, but the Chapter 3 enhancement applies to a range of offenses, while the Chapter 2 enhancement applies only to drug offenses in which the defendant has also received an aggravating-role adjustment under § 3B1.1. *See* U.S.S.G. §§ 2D1.1(b)(16), 3C1.1. Section 3C1.1 is more verbose, stating that it applies to a defendant who "obstructed or impeded, or attempted to obstruct or impede, the administration of justice," while § 2D1.1(b)(16)(D) more briefly describes a defendant who "otherwise obstructed justice[.]"

Relying on these similarities, Jones contends that an obstruction enhancement under § 2D1.1(b)(16)(D) should not apply here because of an exception in the application notes to § 3C1.1, which asserts that if an attempt to conceal material evidence "occurred contemporaneously with arrest (*e.g.*, attempting to swallow or throw away a controlled

13

substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." U.S.S.G. § 3C1.1 app. n.4(D). But Jones has not attempted to argue that his conduct occurred contemporaneously with his arrest—indeed, he made the jail calls the next day—so he cannot rely on that exception.[4]

## B.

Next, Jones challenges his four-level sentencing enhancement for his leadership role. He argues that the drug conspiracy was "a loose group of people buying and selling drugs and making their own profit," and that the evidence did not show that Jones was controlling the actions of other members. Opening Br. at 27.

Section 3B1.1(a) of the Sentencing Guidelines provides for a four-level enhancement if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). To apply the enhancement, the district court must make findings about the scope of the criminal activity, the number of participants, and the defendant's role in the conspiracy. *United States v. Bright*, 125 F.4th 97, 103 (4th Cir. 2025) (discussing U.S.S.G. § 3B1.1(a)).

---

[4] Neither party briefed the applicability of our holding in *United States v. Campbell*, 22 F.4th 438, 445 (4th Cir. 2022), in which we held that the Supreme Court's decision in *Kisor v. Wilkie*, 588 U.S. 558 (2019), governs our treatment of the commentary to the sentencing guidelines. Here, because Jones's conduct did not occur contemporaneously with his arrest, we do not address the extent to which we should rely on Application Note 4(D) when interpreting § 3C1.1 or the extent to which § 2D1.1(b)(16) is the "functional equivalent" of § 3C1.1. Response Br. at 10.

The four-level enhancement cannot apply unless the defendant is an organizer or leader "of *people*," not simply of property. *United States v. Cameron*, 573 F.3d 179, 185 (4th Cir. 2009) (quoting *United States v. Sayles*, 296 F.3d 219, 226 (4th Cir. 2002)). The defendant does not need to exercise control over every other participant, but he must exercise control over at least one other participant. *See United States v. Steffen*, 741 F.3d 411, 416 (4th Cir. 2013).

The district court found that Jones was a leader in a drug trafficking organization that included twelve participants[5] and that Jones "exercise[d] control or authority certainly over Turner and over Thompson and over his girlfriends[.]" J.A. 680. Jones challenges both the number of participants and the finding of control.

First, we turn to participants. A "participant" is someone who is "criminally responsible for the commission of the offense," but they "need not have been convicted." *Bright*, 125 F.4th at 101 (quoting U.S.S.G. § 3B1.1. app. n.1) (cleaned up). Jones argues that McAllister and Langford "were mere girlfriends of Lawrence Jones and not participants in the conspiracy." Opening Br. at 28. The government responds that Jones's direction for them to conceal proceeds "alone showed that he instructed others to further his drug business." Response Br. at 26.

We disagree. We have previously held that a defendant's jail call asking a family member to collect money for him was insufficient to qualify him for the leadership

---

[5] The court included "Robert McNeal, Tyrone Bragg, Wesley Kelly, Calvin Kelley, Keishron Kilpatrick, Marquis Brite, Hurley Cannady, David Se[a]well, the two girlfriends, Mr. Turner, and Mr. Thompson." J.A. 678–79.

15

enhancement because there "was no evidence that [the family member] had any other part in the conspiracy" and that "this one recorded instance in which she did something Baker asked her to do" was insufficient. *United States v. Baker*, 539 F. App'x 299, 305 (4th Cir. 2013) (unpublished); *see also United States v. Burnley*, 988 F.3d 184, 189 (4th Cir. 2021) (holding that directions for family or friends to move money from prison were insufficient to explain finding of management).

However, removing McAllister and Langford from the participant list only takes it down to ten people. We cannot see how Jones can decrease the number to under five, and he does not make the attempt in his briefing.

Next, we turn to control over other participants. Jones, inexplicably, does not challenge the district court's finding that he controlled Turner and Thompson.

As recorded in the presentence report, Turner was a confidential informant who reported that Jones instructed him where, when, and to whom to deliver drugs. The district court also reviewed a taped statement from Turner and determined that Turner's various reports were credible.

Evidence also shows that Thompson followed instructions from Jones in making drug purchases. In several recorded phone calls between Jones and Thompson, Jones asked Thompson to meet with a cocaine supplier and to purchase certain amounts if the quality seemed acceptable. Jones told Thompson how to inspect the cocaine, telling him to cut a package open all the way, like Thompson had seen Jones do "a hundred times." J.A. 558.

In short, the district court did not commit clear error by finding that Jones exercised control over at least one other participant in a criminal activity that included at least five participants.

C.

Though we conclude that the district court did not err in applying the obstruction or leadership enhancements, we observe that Jones's Guidelines range would not have changed in their absence. *See United States v. Rose*, 3 F.4th 722, 730–31 (4th Cir. 2021) ("[W]e will not vacate a sentence based on an alleged Guidelines error if we can determine from the record that the error is harmless." (cleaned up)).

Jones's sentencing was based on a total offense level of 40. And Jones does not challenge his designation as a career offender under § 4B1.1, which means that his minimum offense level would have been 37. *See* U.S.S.G. § 4B1.1(b)(1). An offense level of 37, combined with his criminal history category of VI, would have subjected Jones to the same Guidelines range of 360 months to life imprisonment that the district court considered in this case. *See* U.S.S.G. § 5 pt. A (sentencing table). Accordingly, even if the district court had erred in applying the obstruction or leadership enhancements, the error would have been harmless.

V.

For the foregoing reasons, the district court's judgment is affirmed.

*AFFIRMED*

17